## Douglass *v.* Beaver County et al., Appellants.

Argued April 19, 1943. Before KELLER, P. J., BALD-

**116**

RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and
RENO, JJ.

*H. E. McCamey*, of *Dickie, Robinson & McCamey*,
with him *William W. Matson*, for appellants.

*Frank E. Reed*, of *Bradshaw, McCreary & Reed*, for
appellee.

OPINION BY RENO, J., July 16, 1943:

In this workmen's compensation case, the referee and
the board refused compensation. From the order of
the court below remanding the case "for further hear-
ing, with the suggestion that impartial medical wit-
nesses be called," the employer has appealed. Ap-
pellee's counsel suggested that this is an interlocutory
order and that the appeal is subject to a motion to
quash but they have not made the motion, because, as
they state in their brief, "if this court decides that
there was no accident proven then the testimony of the
doctors in this respect would not be helpful and there
would be no reason for taking impartial medical testi-
mony."

The referee found: "3. We find as a fact that on May
3, 1940 the claimant did not sustain injuries by accident
while in the course of his employment as contemplated
within the meaning of the Workmen's Compensation
Act. 4. We find as a fact that on May 3, 1940 after
his return to his home following the completion of his
day's employment the claimant suffered from a cere-

bral hemorrhage which condition was not the result of or in any way associated with an accident." These findings were affirmed by the board in an opinion in which, after referring to the medical testimony, it said that "the other evidence in the case indicates that an accident within the meaning of the Workmen's Compensation Act did not happen."

Claimant was an automobile mechanic employed for eight years by the Department of Roads and Bridges of Beaver County to repair automobiles and do "the general run" of work of that department. On May 3, 1940, about 3:00 P. M., he was engaged in his daily task of cleaning the garage and he used a crowbar to open a drain and thereby let the water out of a grease pit. He continued with his duties until 4:30 P. M. It was pay day and he waited for his check and then drove approximately eight miles to his home in his own automobile. On the way he stopped and purchased groceries weighing about twenty to twenty-five pounds and carried them to his car. He reached home about 5:30 P.M., and parked his car and walked about one hundred feet to the house. Upon entering it he became ill and sustained a cerebral hemorrhage.

In draining the grease pit claimant used a solid iron bar an inch and half or two inches thick and eight or nine feet long, the weight of which he did not know but which he estimated roughly at seventy-five to one hundred pounds. He pushed it up and down, back and forth. He testified that "nothing out of the ordinary happened to him" as he was working with the bar. He testified that he did not strike himself, fall, slip or twist himself, that he had no pain and that there was no particular part of his body that he felt might have been injured. But, he testified, he "felt the strain of using the bar." To the referee who asked, "What kind of feeling was it", he replied, "I am trying to impress upon you people that using a bar is a necessary strain."

The referee asked, "Did you ever have this same feeling before?" and claimant answered, "Yes, sir, I have". To the further questions of the referee he testified: "Q. Did you have pain? A. No, sir, I did not. Q. Did you just feel tired? A. I felt the strain. Q. Is that what you mean by strain? A. That's right. That's the only thing I am explaining. Q. In other words you felt tireder than you had on other occasions? A. No, I did not feel tired. I myself was tired, such as working hard, a person—Q. Did you feel fatigued after, you were weak? A. Just a tired feeling." Asked by his counsel, "Did you notice anything about yourself as you drove home?" he answered, "No, the ordinary, a person might. I felt that I wasn't one hundred per cent but I just passed it off as I have done hundreds of times." The referee asked him how he felt and he replied, "I can't say that I was really sick. I can't say I was sick."

Touching upon the question of the character of the work he was accustomed to perform, the claimant testified that several days before the alleged accident he, with a helper, was engaged in grading the lawn at the County Home. They operated a large roller, filled with water, weighing between 500 and 550 pounds. They pulled it over level and hilly grounds and up and down terraces. Claimant testified that while working, "I noticed my heart beating very fast when I pulled this up and down hill—everyone for that matter." His further testimony upon that matter was: "Q. Did you notice anything at that time when you were working with Mr. Muoio [the helper]? A. Yes, I noticed my heart beating very fast when I pulled this up and down hill—everyone for that matter. Q. Did you make some remark to Mr. Muoio about it at that time? A. Yes, sir. Q. But you felt no ill effects from that when you went home? A. No, sir. Q. And you worked the following day? A. Yes, sir. ...... Q. You never had,

aside from this occasion when you were helping to pull this roller ever felt a sensation about the heart? A. I had a sensation about my heart when I was pulling the roller. Q. Did you have the same sensation when this happened? A. I did not have the straining sensation when I was pulling the roller. Q. Did you have the sensation about your heart when you were working with the bar? A. No, sir. Q. So that the two separate occasions were separate feelings, distinct sensations? A. That's right."

This fair summary of claimant's testimony does not reveal an accident. The claimant himself describes the occurrence as "nothing out of the ordinary", and that he had it hundreds of times before. True, his description is vague and one gathers the impression that what he calls a strain was no more than the muscular exertion adequate to the task in which he was engaged. He was not sick, he did not faint, he experienced no pain and the entire picture is an ordinary occurrence in the usual routine of his work. Though he says he was in good health, his own statements plainly show that for some time before the alleged accident he was in a condition which put him in jeopardy of a stroke. His own physician testified that prior thereto claimant's blood pressure was abnormally high. However that may be, the claimant failed to establish the happening of something undesigned, unexpected, or fortuitous, outside of the ordinary course of events: *Royko v. Logan Coal Co.*, 146 Pa. Superior Ct. 449, 22 A. 2d 434.

The case, therefore, falls squarely within the doctrine of *Adamchick v. Wyoming Valley Collieries Co.*, 332 Pa. 401, 3 A. 2d 377, where it was said: "To secure compensation there must be proof both of an accident and of an injury; an accident cannot be inferred merely from an injury. There must be some evidence of an accident, either direct or circumstantial, in the latter instance clearly and logically indicating it. In this case, there was none. Nor can an injury be inferred

simply because there was an accident. There must be proof that the injury resulted from an accident." In *Crispin v. Leedom & Worrall Co.,* 341 Pa. 325, 19 A. 2d 400, the Supreme Court said, "In the case before us it cannot be said that there was an 'accident' in common parlance or within the meaning of the Act. The term could no more be applied to that which here occurred than it could be made to describe a situation where a man pushing a wheelbarrow came in contact with a one inch board lying on the floor, failed in the first instance to use sufficient force to cause the wheel to pass over it, but by exerting more force overcame the obstacle. No one would speak of such an occurrence as an accident." To the same effect is *Hamer v. Rishel,* 147 Pa. Superior Ct. 585, 24 A. 2d 664, in which this court adopted the following statement of the court below: "In applying the rule of the decisions to this case, we are unable to find in this record sufficient evidence of an accident to justify an award. As a matter of general knowledge as well as of inference from the testimony in this case, carpenters must, in the doing of their work, carry supplies and sometimes items of considerable weight, such as doors. But the fact that work is hard and arduous does not mean that the employer is liable if injury occurs therein. Here the testimony does not show nor can any inference be drawn of anything which would ordinarily be referred to as an accident. What the deceased did in carrying the doors was exactly what he intended to do. The injury to his body therefore, was simply the result of his doing his regular work. Its effect upon him was one entirely due to the natural progress of the disease from which he suffered." See also *Good v. Pennsylvania Department of Property and Supplies,* 346 Pa. 151, 30 A. 2d 434, *Lesko v. Lehigh Valley Coal Co.,* 270 Pa. 15, 112 A. 768; *Senchak v. Tech Food Products Co.,* 152 Pa. Superior Ct. 247, 31 A. 2d 746. There is ample competent evidence in the record to support the finding that,

under these and other authorities, no compensable accident occurred.

The court below remanded the case, as we stated, for the purpose of taking further and impartial medical testimony. However, since we concur with the referee and the board, there is no occasion, as the appellee concedes, to return the case for that purpose. It may be said, in passing, that the court below was concerned about the conflict in the medical testimony as to how soon a stroke takes effect. But, having decided that there is sufficient competent evidence to support the finding that claimant did not sustain an accident, the question as to the interval of time which elapses between a strain and the onset of a stroke is irrelevant. No reason exists for taking further testimony.

The order of the court below is reversed and the order of the Workmen's Compensation Board is reinstated.