Opinion by
 

 Cunningham, J.,
 

 The employer in this workmen’s compensation case, Ashley Rishel, was the father of the deceased employee, Walter Rishel, who died on. June 22,1936, from “rheumatic heart disease.” Decedent and two brothers were employed by their father as carpenters. His widow, Kathryn Rishel, claimed compensation for herself, and two young children, upon the theory that during the course of her husband’s employment on March 10, 1936, his preexisting heart disease was so aggravated by the “exertion” put forth by him in carrying certain wooden doors from one part of a building to another that his death was “accidental” within the meaning of Section 301 of our Workmen’s Compensation Act of June 2, 1915, P. L. 736, 77 PS §§411, 431. The employer’s insurance carrier denied liability upon the ground that her husband’s death was not attributable to any “injury by an accident” within the intendment of the statute, but had resulted from the normal progress of the heart disease with which he had been afflicted for years.
 

 As the result of several hearings before referees and appeals to the board, an award was made to claimant and affirmed by the board. By reason of the remarriage of claimant in 1939, the award was modified to meet that change in her status.
 

 Upon the appeal of the carrier to the common pleas, its exceptions to the action of the board were sustained and judgment was entered in favor of the employer
 
 *587
 
 and insurance carrier; this appeal by the claimant from that judgment followed.
 

 In an able opinion by Smith, P. J., of the court below, supporting the judgment appealed from, the only question of law involved was accurately stated and the evidence fully and fairly summarized in the following language:
 

 "The sole question in the case is whether or not Walter Rishel died as a result of an accident in the course of his employment within the meaning of the Workmen’s Compensation Act.
 

 "There is no substantial dispute about the facts. Walter Rishel was an employee of his father, Ashley Rishel, a building contractor in Clearfield. For a period of some years Walter Rishel had worked for Ms father as a carpenter. During a considerable period prior to his injury he had done office work for the defendant, but due to shortage of work and contraction of the defendant’s organization clonsiequent fther'dto, it was necessary for him to be employed as a carpenter on jobs, rather than at office work. He worked on at least two such carpenter jobs for defendant during a period of several months prior to the injury. The testimony of decedent’s brother, Preston Rishel, indicates that while he was given somewhat lighter work latterly than those regularly working as carpenters, he had been accustomed to and actually did work ordinarily done by carpenters.
 

 "On March 10, 1936, the decedent was working in a house or apartment building known as the Dr. S. S. Davis house in Clearfield. He was particularly engaged in cleaning up materials which had accumulated in a part of that building. It was necessary for him in so doing to carry some doors from one part of the building to another part, which involved going through several rooms and passageways and up and down several stairways, a total carrying distance testified to of about 180 feet. The doors were testified to as weighing 70 tQ
 
 *588
 
 80 pounds each. He made three trips, one with each door. After carrying the third door he complained to his brother, Preston Rishel, that while carrying it he had a burning sensation in his chest, and that he felt ill. He then desisted from work the rest of the day, remaining, however, about the Davis house for some time and attempting to help his brother in guiding the carrying of other materials; having expectorated blood and continuing to feel ill, he was taken home during the afternoon and a physician was called in the evening. The physician found he had suffered a hemorrhage of the lungs. He remained ill continuously and in the charge of physicians until June 22,1936, when he died.
 

 “A postmortem examination was made and it showed, in the opinion of physicians both of the claimant and defendant, that there was a valvular heart condition of long standing. The report of the autopsy, which was filed with the testimony, shows: ‘Cause of Death: Rheumatic Heart Disease.’ ‘Clinical Diagnosis Mitral Stenosis with Hypertrophy. Dilatation and Failure.’ At the conclusion of the report was contained the following, under the heading, Notanda: ‘Death was due to dilatation and failure of a hypertrophied heart, resulting from an old rheumatic heart disease with stenosed and insufficient heart valves. The dense fibrosis and calcification of the mitral valve gives evidence of long chronicity. The terminal chronic passive congestion of lungs, liver, spleen was at least a matter of months.’
 

 “The testimony of the doctors at the hearing was that there was a valvular blockage in the mitral valve which prevented normal passage of blood through the heart, that secondary to that, blood was dammed back into the lungs and the lungs were under undue pressure as a result ; that under the strain of work there was sufficient capillary rupture to cause hemorrhage and the consequent filling of the lungs.”
 

 Manifestly, this case is one in which the decedent had
 
 *589
 
 been suffering for a considerable period of time with a serious preexisting disease. Claimant, therefore, had the burden of showing, by competent medical testimony and beyond mere conjecture, that her husband’s death was attributable to some unexpected, fortuitous, and untoward occurrence, aside from the usual course of events, amounting to an accident within the meaning of the statute, rather than to the natural and normal progress of his disease. There was no evidence of any slipping, stumbling, or of any external, unexpected or untoward, occurrence. Claimant relied solely upon the theory that decedent’s diseased and weakened heart had collapsed by reason of what she alleges was an “unusual,” or “over,” exertion put forth by him in carrying the doors. This contention raised an issue which has frequently been before, and considered by, our appellate courts.
 

 The meaning of the term “over-exertion,” as used in decided cases, was fully considered in
 
 Pastva v. Forge Coal Mining Co. et al.,
 
 119 Pa. Superior Ct. 455, 462, 463, 179 A. 919, and cases there cited. The cases in which a preexisting disease was an important factor have been classified in
 
 Royko v. Logan Coal Co.,
 
 146 Pa. Superior Ct. 449, 22 A. 2d . 434. Under the third classification therein will be found the cases in which it has been held that the “over-exertion” shown by the evidence in each amounted to a compensable “accident” within the intendment of the statute.
 

 The opinion of Judge Smith demonstrates that he clearly appreciated the principles of law applicable to the issues in the case at bar and properly applied them to the evidence. We adopt the following excerpts therefrom:
 

 “The difficulty lies principally in the application of the rule, rather than in its statement. As we understand, the unusual or untoward occurrence which amounts to a compensable accident need not be shown by external evidence only; it may be inferred from the
 
 *590
 
 nature of the injury to the body, as for instance an unusual sprain, twist or other injury, explainable only by an accident. But where the death or disability results from the natural, ordinary, course of disease, it is not compensable even though some exertion in the course of the employment may have been the occasion which precipitated the injury.
 

 “In applying the rule of the decisions to this case, we are unable to find in this record sufficient evidence of an accident to justify an award. As a matter of general knowledge as well as of inference from the testimony in this case, carpenters must, in the doing of their work, carry supplies and sometimes items of considerable weight, such as doors. But the fact that work is hard and arduous does not mean that the employer is liable if injury occurs therein. Here the testimony does not show nor can any inference be drawn of anything which would ordinarily be referred to as an accident. What the deceased did in carrying the doors was exactly what he intended to do. The injury to his body, therefore, was simply the result of his doing his regular work. Its effect upon him was one entirely due to the natural progress of the disease from which he suffered. We are compelled to the conclusion, therefore, that the compensation authorities are in error in finding in favor of the claimant.
 

 “It is argued on behalf of the claimant that because the decedent had not carried doors and ordinarily done other of the comparatively heavy work done by carpenters, this amounted to an over-exertion upon his part. In our opinion this view is not sound. When a man is engaged in work as a carpenter, or other well-known class of work, it must be assumed that his employment will involve such work as is usual, and will naturally include some labors which are more arduous and involve more strain than others. It would be a departure from reality to say that the occasional carrying of doors in connection with a carpenter’s work
 
 *591
 
 would not be an ordinary occurrence in a particular carpenter’s employment, merely because it happened that during his previous employment he had not occasion to do that particular thing.”
 

 It should be noted that the present case was decided by the board and the court below prior to the filing by our Supreme Court, on April 14, 1941, of its opinion in
 
 Crispin v. Leedorn and Worrall Co. et al.,
 
 341 Pa. 325, 19 A. 2d 400, reversing the judgment of this court in 142 Pa. Superior Ct. 1, 15 A. 2d 549. We think the case at bar is ruled against the claimant by the decision of the Supreme Court in the Crispin case, and that it falls within the first, rather than the third, classification set out in the Royko case, namely, those cases in which compensation was denied because the employee, notwithstanding his preexisting diseased physical condition, continued at work until stricken while performing the usual duties of his employment and without the happening of any unexpected external occurrence. If counsel for claimant could have had the benefit of the decision of the Supreme Court in the Crispin case, it is doubtful whether the present appeal would have been taken. None of the assignments can be sustained.
 

 Judgment affirmed.