Garver *v.* B. K. Elliott Company et al., Appellants.

512

Argued April 14, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellants.

*Francis A. Wolf,* with him *Leo A. Nunnink,* for appellee.

OPINION BY HIRT, J., July 19, 1944:

The award in this compensation case, as affirmed (with some modification as to which there is no dispute) by the court, is for partial disability. It is based upon a finding that the disability resulted from the aggravation of an existing arthritic condition by an accident in the course of employment. We are of the

opinion that claimant has not met the burden of proving injury from an accident. The judgment will be reversed.

Claimant worked but part time, according to the needs of defendant employer, as a comptometer operator. She also performed some clerical duties as directed. When she began her employment in 1937 she was provided with a "library table" upon which the comptometer was placed. Her chair was not adjustable and she testified that she had to reach up about ten inches above the table to operate the machine and because of this abnormal position her body was thrown out of line. Pain developed in her right arm a "short time" after she started to work and in 1938 she was confined to her home for three weeks from that cause. She complained to her employer that the table was too high and in 1940 a typewriter desk was substituted for the table. The desk though much lower, was still too high and did not relieve her discomfort in operating the machine. Early in January 1941 a collapsible shelf was installed at a lower level, near her desk. When not in use the comptometer was removed and the shelf was let down against the wall by moving the braces which supported it. In describing the alleged accident claimant testified: "On that day, [January 8, 1941] I went in, after lunch, to operate the machine. I had not operated it in the morning, and I went in to put this bracket up, and I couldn't get it up, and I pulled and jerked and nearly pulled myself apart. I got it up, but the little braces wouldn't catch, so I had to have one of the boys come over and fix these braces up, to hold it up. After I jerked, I started to cry and went out to the wash room ...... I ached all over. My arm had been aching over a period of years, and this jerking and everything upset me, so I stayed in the wash room about a half hour or longer, and then when I came out, I operated the machine for a little while,

and in order to get into the drawers on the right side of the desk—at that time, I was using most of those drawers—I had to put that bracket down again, so after I was through using the machine, I went through the same thing, trying to get it down, and I couldn't get it down. I broke a ruler trying to get it down hammering it, because I was afraid to jerk any more, and I couldn't get it down, and one of the fellows came over and he couldn't get it down, so they called the porter." Following the effort of raising the bracket or shelf, claimant suffered pain in her back. She consulted a doctor about a month later for this condition and since September 1941, at his direction has been wearing a brace supporting the back.

She reported the incident of her difficulty in raising the shelf to the secretary of defendant employer but did not report an accident. And she did not allege an injury from accident in her original claim petition but based her claim on "Arthritis of the spine caused by improper posture over a period of years caused by desk and machine being too high." At the hearing in January 1942, the claim was amended by alleging that an injury occurred while attempting to release the wall bracket "requiring extra strain and effort, ...... aggravating a preexisting condition or disease, diagnosed as postural arthritis."

Dr. William B. Spinelli, claimant's only medical witness, first saw her on February 9, 1941. He testified: "She complained of pain in the right shoulder, right breast and lower part of back" and told of the difficulty she had with the wall bracket and of the sharp pain in her back after trying to raise it. His diagnosis was a radiculitis or inflamation of nerve roots "due to pressure from a chronic hypertrophic arthritis in the dorsal spine aggravated by trauma produced in January 1941, poor body mechanics, with a first degree flat foot in arising off the surface." In his opinion the sudden pain

resulted from her effort. He said: "The patient's initial complaints when I saw her, were due to root pain on pressure and poor body mechanics. This patient could go along for years without any pain at all, but if she did anything unusual enough to cause pressure on the nerve root then she developes ...... a radiculitis." And further: "Following any constitutional breakdown or any trauma ...... she is going to have pain all her life, as long as she keeps her body pained with fatigue or any exertion of any kind." Although (based upon a history given him by claimant) he believed that the arthritis was aggravated by trauma, he conceded that her condition could have been brought about without trauma "by faulty body mechanics just as well."

It is clear that the award, under the circumstances, cannot be sustained on the theory of aggravation of an existing condition by unusual exertion. Over-exertion aggravating an existing disease may constitute an accident and support a claim for compensation. But proof of the aggravation of a pre-existing condition, in itself, is not enough; that fact alone does not give rise to an inference that its cause was accidental. There must be clear proof of an accident. *Adamchick v. Wyoming Val. Col. Co.*, 332 Pa. 401, 3 A. 2d 377; *Paydo v. Union Collieries Co.*, 146 Pa. Superior Ct. 385, 22 A. 2d 759. Where there is a pre-existing disease the burden is on claimant to show "by competent medical evidence, and beyond mere conjecture, that the disability ...... resulted from the alleged accident and not from the normal progress of the disease": *Royko v. Logan Coal Co.*, 146 Pa. Superior Ct. 449, 22 A. 2d 434. Disability overtaking an employee at work is not compensable unless it is the result of an accident. *Gausman v. Pearson Co.*, 284 Pa. 348, 131 A. 247. "An unusual effect of a known cause" may constitute an accident if "unexpected and unforeseen": *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 164 A. 724. But "if an employee al-

ready afflicted with a disease suffers in the course of his employment an injury which is the natural result of the disease, there can be no recovery, for there is then neither the fortuitous event to cause the injury ...... nor an unexpected result of an ordinary happening": *Good v. Pa. Dept. of Prop. & Sup.*, 346 Pa. 151, 30 A. 2d 434.

It is only in a limited sense that over-exertion may be regarded as an accident. *Pastva v. Forge Coal Min. Co.*, 119 Pa. Superior Ct. 455, 179 A. 919; *Lacey v. Washburn & Williams*, supra. Over-exertion does not include every degree of effort regardless of its effect on a diseased body. The result may be unexpected or unforeseen to the person affected and still not be an accident if the exertion is not unusual and the disability is attributable to the normal progress of the disease. Claimant in her testimony places the emphasis on her mental reaction to her effort in raising the shelf. Shorn of this abnormal aspect, her testimony does not establish *over*-exertion in any sense recognized as a causative factor of compensable injury. The effort expended in raising the shelf was merely the occasion of lighting up the arthitis. Any effort in performing claimant's customary duties might have had the same result. The mechanism of the collapsible shelf was not faulty; its operation was simple and it worked stiffly merely because new; claimant was instructed in its operation and raising and lowering the shelf became and has continued to be a part of her regular duties.

This case presents nothing more than disability from an occupational disease of a type not within the classes made compensable under our occupational disease compensation law.

Judgment reversed and entered in favor of defendants.