## Lemmon v. Pennsylvania Department of Highways (et al., Appellant).

Argued October 6, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*S. H. Torchia*, with him *Ralph H. Behney* and *T. McKeen Chidsey*, Attorney General, for appellant.

*David L. Ullman*, with him *J. Francis Yake, Jr.*, for appellee.

OPINION BY FINE, J., January 14, 1949:

The State Workmen's Insurance Fund appeals from the entry of judgment on a workmen's compensation award in favor of Walter A. Lemmon, appellee, complaining that claimant's total disability occurred in the performance of his usual and regular duties and was not the result of an accident within the meaning of the Workmen's Compensation Act. The referee, the board and the court below all concluded that appellee had sustained an injury as a result of an accident.

The single question for determination in this appeal is whether there was legally competent evidence to sustain the findings of the compensation authorities that claimant's total disability was of accidental origin within the provisions of the Workmen's Compensation Act.

The uncontradicted evidence establishes that claimant, forty-four years of age, was, at the time of the injury, employed as a road foreman of maintenance

work by the Pennsylvania Department of Highways. He supervised the repair of surface and cleaning of highways and in the course of his work he pulled out highway signposts on the average of "once or twice a week." About noon on August 7, 1945, claimant attempted to remove an iron highway signpost weighing approximately fifteen pounds, located near the square in East Berlin, Pennsylvania. The post, which was embedded about twenty-four inches, had been so bent that motorists could not read the highway sign. Claimant stated: "I seen the post was bent over and I stopped and got out and took it back and forwards this way (indicating) and go down and raise up, and that is when the awful pain hit me in the head." The post was "extra tight" because it was embedded in shale. He testified that the job of removing the post was not a one man job although one man could do it; that he had to give it "all [he] had"; and that, as the post came loose, he felt a severe pain in his head, starting at the forehead and going down the back of his head and neck. He loaded the post on the truck and drove to the office of a doctor living nearby in East Berlin where he collapsed on the doctor's porch. He remained unconscious until September 12, 1945, or more than one month after the injury.

The undisputed medical testimony established that the claimant's disability was due to a cerebral hemorrhage on the right side of the brain resulting from a sudden increase in intercranial pressure brought about by excessive strain in removing the post, and that he is presently totally disabled. Dr. Bruce N. Wolff, who examined claimant upon admission to the Warner Hospital at 2:45 p.m. immediately following the attack, testified: "A. . . . I believe the exertion here caused it, that is my opinion, because the patient didn't have any elevation of his blood pressure and was generally in good health previously and evidenced good health on examination except for this thing that hit him sud-

denly. . . . Q. Is it your opinion the injury came from the exertion? A. I believe it did. . . . A. I don't see anything else but what this patient ruptured his blood vessel with the excessive strain he had to use. . . . I think the decided increase of intercranial pressure to move the post was the thing that caused the vessel to rupture." The undisputed medical testimony shows that the claimant was in excellent health prior to the day of the accident, and that his blood pressure, while within normal limits, was lower than average. Dr. Wilbur H. Miller, claimant's family doctor, testified that he had made a complete physical examination of the claimant approximately one month before the accident and found his blood pressure to be 120/80 and his health to be good.

Appellant produced no testimony whatsoever and does not dispute the fact that claimant's disability—paralysis of the left side of the body—was due to a cerebral hemorrhage. It contends however that a cerebral hemorrhage is the end result of a diseased condition, even though there was no evidence of a preëxisting disease. It further contends that there is no evidence that the ". . . cerebral hemorrhage was brought about in any other manner than by the performance of claimant's usual work and in the usual manner".

The difficulty with appellant's contention that the cerebral hemorrhage is the end result of a diseased condition is that not only is there no evidence the claimant had high blood pressure, but the uncontradicted testimony clearly establishes the contrary. As already indicated, when examined by Dr. Miller, Lemmon's blood pressure was within normal limits, lower rather than higher than the average. Dr. Wolff testified claimant's blood pressure was normal, 140/80, upon his admission to the hospital only a few hours after his affliction; that a little more than a year after the injury the claimant's heart was good, his blood pressure was normal, and the

condition of his blood vessels was good. Appellant would have us strike down the positive uncontradicted evidence that claimant's blood pressure was normal, and in its place it would have us substitute mere guess and conjecture that the blood pressure must have been excessive or he would not have had a cerebral hemorrhage. We must be guided solely by the evidence and not be ruled by surmise.

Nor are we impressed with appellant's contention that the evidence does not support the finding that the disabling injury resulted from something undesigned, unexpected or fortuitous, outside the ordinary course of events. It is well settled that an injury resulting from overexertion or unusual or extraordinary exertion in the course of employment is compensable. *Foster v. State College Borough,* 124 Pa. Superior Ct. 492, 189 A. 786; *Royko v. Logan Coal Company,* 146 Pa. Superior Ct. 449, 22 A. 2d 434; *Manikowski v. Morris Run Coal Min. Co.,* 163 Pa. Superior Ct. 118, 60 A. 2d 344; *Updegraff v. Pennsylvania Game Commission,* 163 Pa. Superior Ct. 112, 60 A. 2d 605.

"The real difficulty is in determining whether claimant has met the burden of establishing by *substantial, competent evidence* that an accident occurred during the course of his employment—the controlling question of law is whether there is evidence sufficient in quantity and quality to support findings that the injury resulted from the performance of the work and was unforeseen and unexpected": *Buck v. Arndt,* 153 Pa. Superior Ct. 632, 634, 34 A. 2d 823. In resolving that difficulty we must review the evidence in the light most favorable to the claimant for whom the compensation authorities have found (*Hockenberry v. State Workmen's Insurance Fund,* 133 Pa. Superior Ct. 249, 2 A. 2d 536) and give him the benefit of every inference reasonably deducible therefrom. *Paulin v. Williams & Co.,* 122 Pa. Superior Ct. 462, 186 A. 415; *Schubert v. Oswald & Hess Co.,*

161 Pa. Superior Ct. 309, 54 A. 2d 113. An accidental death cannot be presumed from the collapse of an employee while at his work; there must be affirmative proof of the accident (*Mooney v. Yeagle,* 107 Pa. Superior Ct. 409, 164 A. 82) which may be established by circumstantial as well as by direct evidence or by a reasonable and legitimate inference based on proven facts (*Falls v. Tenn. Furn. Co.,* 122 Pa. Superior Ct. 550, 186 A. 272) ; and liberality is contemplated not only in the admission of evidence, but also in the inferences to be drawn therefrom (*York v. State Workmen's Insurance Fund,* 131 Pa. Superior Ct. 496, 200 A. 230).

Evaluating the evidence by those norms, we are irresistibly led to the same conclusions reached by the compensation authorities and the learned court below. "That which distinguishes an accident from other events is the element of being unforeseen; an accident is an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause, and hence unexpected and unforeseen": *Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 578, 164 A. 724. "The criterion for 'unusualness' is not whether the act causing the injury is unusual generally speaking, but whether it is unusual and untoward in the course of the employment in which the employee was engaged": *Balaban v. Severe,* 157 Pa. Superior Ct. 463, 466, 43 A. 2d 543. Cf. *Weissman v. Phila. Electric Company,* 111 Pa. Superior Ct. 353, 170 A. 318; *Foster v. State College Borough,* 124 Pa. Superior Ct. 492, 498, 189 A. 786. It is clearly established that there was a sudden unexpected and accidental lesion of claimant's previously sound blood vessel. The rupture does not necessarily indicate that the blood vessel was weak, but rather, as found by the compensation authorities, that the rupture was caused by extraordinary exertion required of claimant in the removal of the signpost. The claimant was not a laborer in the ordinary sense but a foreman, and most all of his

duties were of a supervisory nature, requiring little or no physical effort. Conceded that twice a week claimant had occasion to remove damaged highway posts, such was not his usual, regular, everyday work. Claimant encountered pains "when [he] was straining to get the post out," which was not "a one man job, but one man can do it, but [he] did it taking all [he] had" because "[he] would say this one was extra tight." Dr. Wolff stated that "exertion of that type may raise your blood pressure to such extent you would burst a vessel." More effort than was usually required must have been exerted by the claimant in removing this post, which precipitated his affliction, suddenly and unexpectedly causing the rupture of a blood vessel. That result does not normally follow a slight or usual exertion by a well man. Evidently something unusual, untoward and unexpected occurred which constituted the accident. As stated in *Barr v. Atlantic Elevator Company,* 124 Pa. Superior Ct. 57, 60, 187 A. 815, " 'Where, on the other hand, a sound heart is affected by a severe exertion, and has not before been so affected, the inference is fair that the exertion which affected the heart, while it was of the same sort, must have differed in degree from that which was usual. It must have, as a fact, been more severe than usual and should be classified with those fortuitous physical violences of the bodily structure, which are properly described as accidents. The work may be of the same "sort" or character as that called usual, but must have been harder than ordinary, or the sound heart which had theretofore stood it would not have yielded to it. . . . If the heart is sound and has stood customary hard work for years, and if on a particular day it weakens, the inference is that the exertion was unusual, not that the heart was weak. Therefore, the inference is not that death was caused by a weak heart, but was caused by unusual exertion.' "

The evidence presents a clear and cogent set of un-contradicted facts which establish that the work which claimant was performing at the time of the accident required much more exertion than that to which he was usually or ordinarily subjected in his day to day activities, and that the increased severity of the work was the cause of, not merely coincidental with, the disability. The extraordinary strain exerted by the claimant in the performance of his work so increased his intercranial pressure that a blood vessel—previously sound and healthy—suddenly, unexpectedly and accidentally ruptured, resulting in a hemorrhage and a paralysis of claimant's left side. There was a direct causal connection between the extraordinary exertion and the hemorrhage which caused the paralysis.

Judgment affirmed.