## Hamilton, Appellant, v. Procon, Inc.

Argued September 15, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*M. H. Goldstein*, with him *Goldstein, Barkan & Brodie*, for appellant.

*John R. Warner*, with him *Marshall, Dennehey & Warner*, for appellees.

OPINION PER CURIAM, December 28, 1967:
Judgment affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal from a judgment of the Court of Common Pleas of Philadelphia County affirming an order of the Workmen's Compensation Board. The Board disallowed benefits claimed by the widow of the deceased employee.

The decedent began working on February 5, 1962, for Procon, Inc., and died on February 9, 1962. The lower court quoted an excerpt from the Board's opinion which appears to constitute an accurate representation of the circumstances of this case.

"Hamilton's [the decedent] job site was at the Gulf Refinery located adjacent to Lanier Road beneath the Penrose Avenue Bridge over the Schuylkill River. His job was to construct wood panel forms, assembled by means of angle irons and anchor bolts. During the 5 days work the ground was muddy, and the deceased was required to wear boots, and wade in the deep mud. In addition the laboring employees were not permitted to park their cars on refinery property. This necessitated the parking of the car, in which Hamilton rode to work, about seven tenths of a mile away from the job site and walking that distance over level ground but on the stoney berm of a road. The wind velocity ranged from 6.9 to 18.3 miles per hour and the temperature ranged from 11° to 53°.

"On Friday, February 9, 1962 Hamilton rode to work, as usual, with Francis Roman. The car was parked and Hamilton walked the additional distance to the job site. While changing his clothes in a shack he appeared ill to his fellow employees who called an ambulance. He was dead on arrival at St. Agnes Hospital. The death certificate showed it to result from arteriosclerotic heart disease.

"The claimant, seeking compensation, blames the death on the work conditions, i.e. the exertion required to walk from the parking lot to the job site and the effort required to wade around in the mud while working."

Consequently, the wife-claimant, alleges that decedent's death was caused by unusual strain and, therefore, must be deemed a death resulting from an accident within the meaning of the Act. The Board denied compensation, however, on the ground that the exertion in this case was incidental to the decedent's employment.

Specifically, the Board found that: *"Third*: On February 9, 1962, while in the course of his employment, Harry Hamilton suffered a heart attack and immediately died.

*"Fourth*: The death of the deceased was precipitated by the exertion and effort required of him in walking more than a half mile to his work and in working daily in mud at the job site.

*"Fifth*: The effort exerted by the decedent as set forth above was incidental to this employment and not unusual thereto.

*"Sixth*: The deceased suffered from pre-existing arteriosclerosis."

On the basis of the Fifth and Sixth findings, the Board denied compensation.

The Workmen's Compensation Act of June 21, 1939, P. L. 520, §301(a), 77 P.S. §431, provides in part that: ". . . *compensation for personal injury* to, or for the death of [an] employe, *by an accident,* in the course of his employment, shall be paid in all cases by the employer, without regard to negligence, . . .". [Emphasis added][1]

---

[1] It is important to note that §301(d) of the Act defines "injury" and "personal injury", but there is no statutory definition

Whether a heart attack is an injury by an accident has been the subject of many cases. Yet, despite years of litigation, our Court, as early as 1938, stated that: "In cases of sudden death which involve the question whether there was sufficient competent evidence to establish an accident, those that are compensatory and those that are not compensatory are divided by a line which at times appears indistinct." *York v. State Workmen's Insurance Fund,* 131 Pa. Superior Ct. 496, 200 A. 230 (1938).

"Obviously if the heart attack is a genuinely work connected injury, to deny compensation benefits would be a gross violation of legislative purpose and of the workmen's rights. It is equally obvious that . . . compensation cannot be paid for every heart attack which happens to make its appearance during working hours. Thus, the task of the courts . . . has been to draw the line between the legitimate application of the Act and the indiscriminate distribution of compensation funds to almost all employed heart victims." Larson, The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution, 65 Mich. L. R. 441 (1967) [cited hereinafter as The Heart Cases].

In order for a heart attack to constitute a compensable injury in our Commonwealth, it must constitute "an accident." "An accident is an occurrence which proceeds from an unknown cause or which is an unusual effect of a known cause and hence unexpected

---

of what constitutes "an accident." In *Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 164 A. 724 (1933), the Supreme Court stated that: "The word accident—as used in the act—must be interpreted in its usual, ordinary, popular sense." Numerous prolix opinions have confronted the question of accidental injury, but a review of these cases reveals a broad generic definition of the word. With specific regard to heart attacks, our courts have appended a sophisticated and arbitrary barrier to recovery by requiring the claimant to prove that the unexpected result, truly an accident in the "popular sense," was caused by some unusual external cause.

and unforeseen." *Wilcox v. Buckeye Coal Co.,* 158 Pa. Superior Ct. 264, 266-267, 44 A. 2d 603 (1945); see 1A Larson, Workmen's Compensation Law, §37.00-37.20 (1966) [Cited hereinafter as 1A Larson]. Although laymen do not normally envision heart attacks when speaking of accidents, our Courts, as early as 1924, have construed "injury by an accident" to encompass heart seizures and attacks as compensable. *Samoskie v. Philadelphia & Reading Coal & Iron Co.,* 280 Pa. 203, 124 A. 471 (1924); *Durga v. Williams,* 89 Pa. Superior Ct. 156 (1926).

It is evident that no heart attack is truly foreseeable, and that no person who reasonably expects a disabling or fatal attack would continue actions that might precipitate it. In addition to being an unexpected result, the heart attack must be caused by an unusual strain or exertion suffered in the course of the employee's employment. In other words, the result must be unexpected and the cause which precipitated the result must be unusual as a matter of law.

In establishing unusual strain, the determinative issues are: "(1) whether or not the task . . . was usual work for the decedent; (2) whether there was unusual strain and exertion; and (3) whether there was a causal connection between such strain and exertion and the decedent's death." *Pudlosky v. Follmer Truck Co.,* 206 Pa. Superior Ct. 450, 214 A. 2d 270 (1965). These three requisites for recovery have become deeply imbedded in our decisions and will be referred to hereinafter as "the unusual strain doctrine."

In applying for relief under this doctrine, the hallmark of claimant's case must be that ". . . the work in which the employee was engaged at the time of the occurrence was of a different nature and required a materially greater amount of exertion, risk or exposure than that to which he was ordinarily subjected, . . ." *Balaban v. Severe,* 157 Pa. Superior Ct. 463, 465, 43 A.

2d 543 (1945).[2]  If the strain is not unusual, no compensable accident has occurred.

In this case, the lower court affirmed the Board's disposition on the ground that there was sufficient evidence in the testimony of other workmen at the site to indicate that the work done by the decedent was not unusual *in his trade.*

---

[2] Compensation in heart cases in which no unusual strain or exertion was proved, has been awarded on a theory known as the "unusual pathological result doctrine." Under this theory, a heart attack is compensable where a previously healthy employee suffers an attack while doing work which calls for no unusual physical strain on the ground that any damage to a vital organ is presumed to constitute an accident. The rationale of this doctrine is that, since there is no prior underlying pathology, it may be inferred that the heart attack would not normally have occurred unless there was some exterior element or force as a causative factor.

If an employee has a history of a pre-existing heart condition, however, the doctrine has been held inapplicable. See *Lingle v. Lingle Coal Company*, 203 Pa. Superior Ct. 464, 201 A. 2d 279 (1964). The prerequisite of a healthy heart is a necessity in order for the injury to be an unexpected or unusual pathological result. "The reason for this is simple. . . . (M)ost heart claims involve myocardial damage induced by an occlusion of a coronary artery. This in turn is usually caused by pre-existing arterio-sclerosis of the coronary vessels. The occlusion can be caused by a gradual narrowing of the lumen until a natural climax is reached by a spasm or a clot suddenly forming at the arterial damage." J. M. McLaughlin, "The Compensability of Heart Injuries under the Pennsylvania Workmen's Compensation Act.," 21 Univ. of Pitts. L. R. 445, 482 (1960) (cited hereinafter as McLaughlin). Therefore, since the decedent in this case had been treated for a heart condition three years prior to his death, the unusual pathological result doctrine cannot be applied here.

Although the dichotomy of awards based on the prior health of the employee is, in my view, questionable, I do not purport to pass judgment on the merits of the unusual pathological result doctrine at this time. For an excellent description of the background and adoption of this doctrine, see: A. F. Barbieri and C. F. Quinn, "The Unusual Pathological Result Doctrine in Pennsylvania." 39 Temple L. Q. 51 (1965) ; see also McLaughlin, supra, 472-482.

452

The wife-claimant contends that the Board erred in the standard applied in determining whether the strain in this case was unusual in that they did so by looking to the trade or occupation as a whole. The case of *Hamer v. Rishel*, 147 Pa. Superior Ct. 585, 24 A. 2d 664 (1942), does afford some colorable support for this proposition. Upon a survey of the voluminous number of cases in this area, however, I conclude that such reliance is unwarranted.

Our Courts have consistently reiterated that the standard to be applied in determining whether an unusual strain has been suffered are the work tasks normally performed by the employee involved and the conditions under which that employee performs them, rather than the duties and working conditions generally prevailing in that employee's trade. See *Balaban v. Severe*, supra; *Betts v. American Stores Co.*, 105 Pa. Superior Ct. 452, 161 A. 589 (1932); *Lorigan v. W. O. Gulbranson, Inc.*, 184 Pa. Superior Ct. 251, 132 A. 2d 695 (1957); *Lemmon v. Pennsylvania Department of Highways*, 164 Pa. Superior Ct. 254, 63 A. 2d 684 (1949).[3]

If a general standard were applied, courts would be required to take cognizance that most trades or occupations involve many tasks performed in many varying types of environments. It is very likely, therefore, that two employees in the same trade may never perform similar work under comparable conditions. Thus, it is impossible to designate for any given trade what tasks or working conditions are "usual". This case aptly illustrates this point. The decedent had never worked

---

[3] In *Lemmon*, the Court said: "The evidence presents a clear and cogent set of uncontradicted facts which establish that the work which claimant was performing at the time of the accident required much more exertion than that to which *he* was usually or ordinarily subjected in *his day to day activities*, . . .". [Emphasis added.]

in these circumstances before and, undoubtedly, many other carpenters have never worked in an oil refinery or constructed wood panel forms. Moreover, the record substantiates the fact that the work performed by the decedent was of an unusual quality for him, even though others had worked in those conditions.

The idea of applying a variable standard of usualness, emphasizing the circumstances involved with each particular employee, is further supported by the common law. Restatement of Torts, §435; see *Barker v. City of Philadelphia*, 134 F. Supp. 231 (1955). Thus, if one negligently injures another person, he is liable for all physical consequences flowing from the original injury. Similarly, in workmen's compensation cases, the employer accepts the worker *cum onere*, and "nothing is better settled . . . than that the Act takes the workmen as they arrive at the plant gate." *Sheppard v. Michigan National Bank*, 348 Mich. 577, 83 N.W. 2d 614 (1957).

This principle comports with the theoretical justification of the Act which treats each person, no matter what infirmities he may carry with him, as an individual, yet integral part, of the physical inventory of a factory. That individual person is expected to be affected by wear and tear and eventually be replaced, but at his own rate. Whether he wears out sooner or later, and whether he has a pre-existing disease, which the work may aggravate, are not essential prerequisites to qualify him for compensation. Rather, any ". . . disability or death of a worker, arising out of production, is an industrial item of damages to be paid for in the form of increased cost of the finished product, the same as are machinery repairs and replacement costs." A. F. Barbieri, Recent Reenactments of the Pennsylvania Workmen's Compensation Laws, 14 Temple L. Q. 35, 36 (1939). Furthermore, the *cum onere* standard is more applicable to cases arising under the Workmen's Com-

pensation Act than at common law because liability is imposed without fault.

Moreover, treating each person individually is a realistic approach. As the Michigan Supreme Court stated: "Some are weak and some are strong. Some, particularly as age advances, have a pre-existing 'disease or condition' and some have not. No matter. All must work. They share equally the hazards of the press and their families the stringencies of want, and they all, in our opinion, share equally in the protection of the act in event of accident, regardless of their prior condition of health." *Sheppard v. Michigan National Bank,* supra.

Assuming that ". . . unusual exertion is proved to be a material cause of the claimant's disability, then the fact that claimant suffered from a pre-existing condition will not preclude recovery of compensation." McLaughlin, supra, p. 471. In other words, "death in the ordinary course of employment resulting from strain upon the heart caused by unusual exertion is an accident within the meaning of the workmen's compensation statutes, and the fact that the employee had a chronic ailment which made him susceptible to the injury does not defeat the right to compensation." *Sadusky v. Susquehanna Collieries Company,* 139 Pa. Superior Ct. 595, 12 A. 2d 828 (1940).

It is clear, however, that a sharp distinction has been made between the case of a workman completely free of pre-existing disease and the case of a workman who suffered from a pre-existing disease prior to the disability. As previously noted, a healthy employee who suffers a heart attack, can utilize the "unusual pathological result doctrine" to obtain benefits.[4]

A workman having a pre-existing defect or disease, however, finds himself at a distinct disadvantage. This

---

[4] See footnote 2.

is true because he must prove that the injury was due to some unusual external stimulus, even though the disease may have been unknown to him and merely an underlying cause, while the strain was a major contributing factor. See *Hamer v. Rishel*, supra; *Pirillo v. Barber Asphalt Co.*, 140 Pa. Superior Ct. 334, 13 A. 2d 906 (1940); *Rettew v. Graybill*, 193 Pa. Superior Ct. 564, 165 A. 2d 424 (1960).[5] Since most humans have some form of degeneration of the arteries and heart, and since many deaths today are attributable to one form of heart disease or another, proving that the cause of the accident was the external strain becomes an almost insurmountable task. Thus, in claims involving heart attacks caused by work-connected strain, recovery in Pennsylvania is relatively rare. See McLaughlin, supra, and A. F. Barbieri & C. F. Quinn, supra.

In my view, therefore, the lower court and the Board did not correctly apply the standard with regard to the usualness of the work-tasks as to this decedent. Thus, I would hold that the injury suffered by the employee was a compensable accident on the ground that the exertion, unusual as to *this employee,* precipitated the heart attack which caused his death.

Moreover, it is my opinion that the unusual strain doctrine has placed artificial limitations upon the Workmen's Compensation Act neither intended by the legislature nor warranted by the language of the statute.

### The New Jersey Rule

The court below cited and quoted at great length from *Ciuba v. Irvington Varnish & Insulator Co.*, 27 N. J. 127, 141 A. 2d 761 (1958), in its opinion, and,

---

[5] In *Rettew v. Graybill*, supra, our Court stated: ". . . [A] pre-existing condition which contributes to the injury bars recovery in such cases."

on the basis of that case, stated that: "There can be no question that the instant case would be compensable had the death occurred in New Jersey. . ." My research and appellant's excellent brief have revealed that the rule of that case, hereinafter referred to as The New Jersey Rule, is followed today in at least thirty-one, other states. See, e.g., *Sheppard v. Michigan National Bank*, supra; *Bryant Stave & Heading Co. v. White*, 296 S.W. 2d 436 (1956) ; *Sawatzski v. Friedman*, 166 N.Y.S. 2d 920, 4 App. Div. 2d 907 (1957) ; *Olson v. State Industrial Accident Commission*, 222 Or. 407, 352 P. 2d 1096 (1960).

The New Jersey Rule does away with the need to prove that an unusual employment effort or strain caused the heart attack. The old Rule followed in New Jersey (which was similar to the present Pennsylvania Rule) ". . . was supplanted by the doctrine that if the attack is caused or precipitated or contributed to by the ordinary stress or strain of the employment, a compensable accident comes into being. Thus, when an employee is suffering from an acute, or passively progressive or quiescent, heart condition, and the ordinary routine exertion of his regular work is too much for the heart, irrespective of whether the effort acts alone, or in conjunction or contribution with the weakness induced by the disease, to precipitate or accelerate or aggravate the attack, the resulting disability or death is within the statutory coverage. There is no requirement that the work effort be excessive in the sense of being unusual or not ordinarily engaged in. It is enough that a usual strain associated with the work was of itself too much at that time because of the condition of the heart, or that such routine effort in combination with the diseased condition of the heart produced the collapse. Compensability arises whenever the required exertion is too great for the man undertaking the work, whatever the degree of exertion or

condition of his heart." *Dwyer v. Ford Motor Co.*, 36 N. J. 487, 178 A. 2d 161 at 163 (1962).

The reasoning most frequently used to support the New Jersey type holding is that the word "accident" refers to the *effect* or the *result*, as well as to the *cause*. Thus, "the 'by accident' requirement is now deemed satisfied in most jurisdictions either if the cause was of an accidental character or if the effect was the unexpected result of routine performance of the claimant's duties. . .". 1A Larson, §38.10, supra.

This concept is not foreign to our Court. Indeed, we use similar reasoning in cases where we apply the unusual pathological result doctrine, holding that the result is unexpected and compensable even if the cause is not unusual. Unlike the New Jersey rule, however, we limit recovery to those cases where the claimant is completely free of pre-existing disease or defect.

The unusual strain doctrine which we follow in Pennsylvania focuses on the unusualness of the cause as well as the result. In my view, there is not such mandate in the statutory scheme nor is there any other indication that such a limitation is demanded. 1A Larson, §38.61, supra.

## The British Experience

It should first be noted that the British, from whom we adopted our compensation laws, interpreted injury by an accident to include effects or results that are unexpected as well as disability arising from unforeseen causes. 1A Larson, §§37.10-37.20, supra.

One of the earliest cases construing the British Act is *Clover, Clayton & Co. v. Hughes*, [1910] A. C. 242, 3 B. W. C. C. 775. In that case, Lord MacNaghten held that "injury by accident" meant nothing more than "accidental injury." Thus, the routine strain of tightening a nut on a wheel which caused the injury

was held compensable, even though there was nothing unusual about the duties performed. Consequently, the important determination under the British Act, from the outset, has been whether the result or effect was unexpected. If so, the injury is denominated as an accident, regardless of the cause. The cause of the accident, in such a case, is irrelevant.

In *Ciuba v. Irvington Varnish & Insulator Co.,* supra, the case in which the New Jersey Supreme Court construed injury by an accident to preclude the requirement of unusual strain, the court quoted extensively from pronouncements of the English House of Lords to interpret their act. "Lord Loreburn, for the House of Lords, said that while the fatal strain was 'quite ordinary in this quite ordinary work,' it was nevertheless a compensable accident, . . . . An accident, he said, 'arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health.'" Lord MacNaghten, concurring, said: "The fact that the man's condition predisposed him to such an accident seems to me to be immaterial. The work was ordinary work, but it was too heavy for him." at 135, 136.

The New Jersey Supreme Court adopted the British view and succinctly stated that: "The essential question is whether strain or exertion incident to the work accelerated the worker's death." The facts of the case before that court showed that the workman had a prior heart condition and there was sufficient causal connection between the exertion of ordinary work and the occlusion. Accordingly, the Court awarded compensation.

### Interpretation of "Injury by an Accident"

Our highly sophisticated treatment of the simple phrase "injury by an accident" is, in my opinion, un-

justifiable as a matter of legislative intention, especially in light of the British view and its application in the majority of states which have compensation laws similar to the one adopted in Pennsylvania.

Our courts have recognized that the basic and fundamental element of an injury by an accident is an occurrence which is unexpected. They have also added a second ingredient, to wit, that the injury be traceable to a definite cause. As a result of this second element, we have required proof in heart cases of unusual exertion as the singular cause of the injury.

More specifically, we require the "injury" or "result" to emanate from a single external event or incident to constitute an injury "by an accident." This interpretation, however, changes the above phrase from "by AN accident" into "by THE accident," thereby necessitating a search for *the* cause, which is not required by the language of the act.

For example, assume that a man lifts heavy sacks many times a day and suffers a heart attack while lifting one in the usual way. Assume further that medical testimony confirms that the heavy lift did, in fact, precipitate the attack. These are indeed the findings of the Board in this case.

Under the New Jersey Rule, the injury would be compensable regardless of whether the man had a "sound heart" or pre-existing condition which his work aggravated or accelerated. All that need be proven is that the work in some way contributed to or precipitated the attack. See *Dwyer v. Ford Motor Co.*, supra.

In Pennsylvania, if the man had no pre-existing illness, he may recover under the unusual pathological result doctrine, where the fiction is created that the work was indeed unusual in order to explain the basis for compensation. See footnote 1 and *Barr v. Atlantic Elevator Co.*, 124 Pa. Superior Ct. 57, 187 A. 815

(1936). If the man had a pre-existing condition, however, he would then have to prove he was performing an unusual task at the time of injury and that this specific task was the external stimulus of that injury.

The above example points out that the New Jersey Rule interprets the act to compensate injuries suffered where the result *or* the cause was unexpected. Pennsylvania, on the other hand, requires that not only must there be an unexpected result, but *also* that the cause be unusual and unforeseen. Thus, even if a worker had no knowledge of a pre-existing heart condition, he may, nevertheless, be denied compensation absent the unusual external event which caused the result. Yet, the fact remains that the effect or result was surely unforeseen and unexpected, and in common-sense terminology, an accident.

### "Usual-Unusual" Distinction Is an Unworkable Rule

The profuse litigation revolving around the accident concept has not only built up a retaining wall against liability in heart cases by a distortion of the language of the Act in light of its derivation and legislative purpose, but has also provided a great source of difficulty in defining a workable rule. The distinction between "usual" and "unusual" assumes that there is ". . . a quantum of exertion or exposure in any occupation which is usual or normal—an assumption which is questionable at best, and certainly difficult to apply. The fallacy of testing work-connection by a comparison of a man's particular fatal exertion with his usual exertion is that, in many occupations, even the usual exertion is clearly capable of causing heart collapse. Conversely, in many occupations the usual exertion requires so little effort that, even when it is exceeded, it is medi-

cally improbable that the 'unusual' exertion could cause heart failure." *The Heart Cases,* supra, 467-468.[6]

Because of the inherent harshness of the unusual strain doctrine, our Court, on certain occasions, has awarded benefits in cases of nontraumatic disability. See *Murphy v. Philadelphia & Reading Coal & Iron Co.,* 98 Pa. Superior Ct. 108 (1930); *Balaban v. Severe,* supra. In these cases, our commendable sympathy for workmen and their dependents has moved us to affirm awards despite pre-existing disease in cases where unusual strain was claimed as the immediate cause of the disability or death. However, the decisions in these cases, and the apparent inconsistency of those decisions with the unusual strain doctrine have made it virtually impossible for a lawyer intelligently to advise a disabled workman whether or not he has a valid claim for benefits in a case similar to the instant one. In *Bryant Stave & Heading Co. v. White,* supra, wherein Arkansas adopted the New Jersey Rule, one of the bases of the court's decision is that "litigants,

---

[6] In *Manikowski v. Morris Run Coal Mining Co.,* 163 Pa. Superior Ct. 118, 60 A. 2d 344 (1948), compensation was awarded for a coronary thrombosis. In that case the claimant and two other coal miners were pushing a coal car, which occasionally stalled, over a hill. The grounds for relief were that the injury was an accident that resulted from unusual strain and exertion. It was noted, however, that pushing coal cars was one of the normal duties of claimant's employment, although it was found that this particular car required extra effort. In *Dolinar v. Pittsburgh Terminal Coal Corp.,* 140 Pa. Superior Ct. 543, 14 A. 2d 871 (1940), compensation was denied a coal miner who collapsed and died after putting forth undue effort and exertion in replacing derailed coal cars onto tracks, a task he had done in the past. The acts performed in both cases were quite similar, yet in the former case the court affirmed the finding of unusual strain while in the latter case it reversed a board finding of the same. Although fact situations obviously do differ, an analysis of these very similar cases serves to exemplify the fact that no guidelines have been promulgated as to what constitutes "unusual" exertion or strain.

lawyers and members of the Commission" are unable to predict results in individual cases because the unusual strain doctrine had been a "source of much controversy and litigation." Such reasoning is equally applicable, in my opinion, to the confusing way in which our Court has construed the Act since its inception.

### Purpose of Workmen's Compensation Legislation

Aside from the distortion of the intention of the legislature and the inherent unworkability of the unusual strain doctrine, the present limitations appended to heart attack cases do not comport with the humanitarian purposes of the Act.

Our Court has said: "It may be trite to again point out that the Workmen's Compensation Law is a remedial Act passed for the benefit of workers, authorized by the police powers of the State and is frequently referred to as a humanitarian measure. The Workmen's Compensation Act was passed for the purpose of protecting workmen. Taylor v. Ewing, 166 Pa. Superior Ct. 21, 70 A. 2d 456 (1950). For this purpose it must be liberally construed." *Dupree v. Barney,* 193 Pa. Superior Ct. 331, 163 A. 2d 901 (1960). Our Court has also often stated that the Act must be liberally construed and borderline interpretations resolved in favor of those it intended to benefit.

The major purpose of the Workmen's Compensation Act in this state, and of the acts in other states, is to have private employers bear the burden of work-connected injury of employees, rather than to have that burden fall on individual workers, on public welfare, or on private charity. Skinner, Workmen's Compensation Law of Pennsylvania, p. 10.

Thus, the Commonwealth's primary concern is that an employee should be paid benefits for any injuries which are unforeseen or unexpected and are suffered in

the course of his employment. This should mean an injury by an accident is compensable whether or not the employee had a pre-existing disease, as long as the result was precipitated or aggravated by any work related task. Only by such an interpretation can we begin to effectuate the purpose of the Act enunciated above.

Yet, in light of these often repeated ideals, our Court, as previously stated in detail, has set up limitations upon recovery that have no sound premise in a historical context or in a logical and reasonable interpretation of the Act. The sole reason for these constraints is the fear that heart and related cases will get out of control, and will become compensable whenever they take place within the time and space limits of employment. As a result of this response, we have built up a body of precedent with arbitrary boundaries to reduce the number of recoveries.

## Effect of Stare Decisis

The numerous states which have abandoned the doctrine followed in Pennsylvania have noted the change to the New Jersey Rule in no uncertain terms. See *Sheppard v. Michigan National Bank,* supra. These other jurisdictions have been cognizant of the effect on insurance carriers and that a slight exertion will often be regarded as a contributing cause of an injury or death and thereby compensable. ". . . [I]t can be expected that medical testimony will always be presented by claimant to establish causal connection between exertion and death, the result of adopting the broad definition prescribed by the legislature is to make compensable nearly every death from cardiac weakness, assuming, of course, that some work movement accompanies the attack." *Olson v. State Industrial Accident Commission,* supra, concurring opinion of O'CONNELL, J.

It is notable that each jurisdiction when adopting the New Jersey Rule had to overrule a large body of precedent. The Latin garb of *stare decisis* did not and should not be used to defeat common sense and sound judicial discretion. We are, of course, dealing with competing considerations. On one hand, we desire certainty and stability in the law. On the other, we recognize the necessity ". . . that our interpretations of the law, particularly of remedial social legislation, [hold] abreast of changing social and economic forces in our society. The adjustment between these competing considerations is a matter of the utmost delicacy, an adjustment in which many complex factors, not the least of which is proper judicial restraint, all play their part. Where error is manifest and injustice rife, however, our course of action is clear." *Sheppard v. Michigan National Bank,* supra at 597.

## Conclusion

It is my opinion, therefore, that the unusual strain doctrine, which is perpetuated herein by the majority, should be discarded and the New Jersey Rule adopted in its place. Whereupon, the present case would become a compensable one. This follows from the inevitable conclusions I have reached that: the present doctrine is out of harmony with modern social and economic conditions; the unusual strain doctrine is founded upon arbitrary and highly questionable premises; and that by perpetuating this rule, we are remiss in that we sanction the denial of compensation by what I deem to be a grudging and lamentable construction of the Workmen's Compensation Act.