## Hamilton, Appellant, *v.* Procon, Inc.

Argued November 15, 1968. Before BELL, C. J., JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

92

*M. H. Goldstein,* for appellant.

*John R. Warner,* with him *Marshall, Dennehey & Warner,* for appellees.

*Thomas Lewis Jones,* and *White, Jones and Gregg,* for amicus curiae.

OPINION BY MR. JUSTICE JONES, April 23, 1969:

This is an appeal from an order of the Superior Court affirming an order of the Court of Common Pleas of Philadelphia County which affirmed the Workmen's Compensation Board's denial of compensation to Helen Hamilton (appellant) for the death of her husband.

Harry Hamilton was hired by Procon, Inc., as a carpenter on February 5, 1962, and assigned to the Gulf Oil Corporation refinery located near the Pen-

rose Avenue Bridge in Philadelphia. He worked at this site constructing wood panel forms from February 5 until his death from a heart attack on February 9. During the four days in which he worked, the ground was muddy and he was required to wear hip boots and wade in deep mud. The company employees were not permitted to park on the refinery property, so that Hamilton was forced to park seven-tenths of a mile from his work and walk that distance to the refinery in wintry weather conditions.[1]

On Friday morning, February 9, Hamilton walked the seven-tenths of a mile. When he went to change into his work clothes, fellow employees noticed that he seemed ill and summoned an ambulance. Hamilton was dead on arrival at the hospital from arteriosclerotic heart disease.

The evidence in the record indicates that Hamilton had been previously treated for hypertension and cardiovascular heart disease but had not complained of any health problem for the two years preceding his death and had never lost any working time because of the hypertension or cardiovascular disease. Members of his immediate family testified that he became a changed man after starting to work at the refinery; he complained about the working conditions—something he had never done before—and showed signs of abnormal fatigue and of a greatly diminished appetite. Witnesses called by Procon testified that working conditions undergone by Hamilton before his death were not particularly unusual for members of the carpentry trade nor for employees at the refinery in general. No evidence introduced by Procon, however, refuted appellant's contention and proof that the working con-

---

[1] On the four days in question the wind velocity ranged from 6.9 to 18.3 miles per hour and the temperature ranged from 11 to 53 degrees.

ditions were unusual as far as the *deceased* was concerned.

In denying appellant's request for compensation, the Board found as facts that the "death of the deceased was precipitated by the exertion and effort required of him in walking more than a half mile to his work and in working daily in mud" but that "the effort exerted by the decedent as set forth in other findings was incidental to his employment and not unusual thereto." The Board reasoned that "[t]o constitute a compensable accident in the instant case it must be shown that the work in which the employee was engaged at the time of the occurrence was of a different nature and required a materially greater amount of exertion, risk or exposure than that to which he was ordinarily subjected. . . . The criterion for 'unusualness' is not whether the act causing the injury is unusual generally speaking, but whether it is unusual and untoward in the course of the employment in which the employee was engaged."

Hamilton's widow appealed to the Philadelphia Court of Common Pleas which affirmed in a lengthy opinion by Judge BARBIERI in which Judge WATERS joined. The court held specifically that the unusual strain which must be demonstrated before compensation is allowed in heart attack cases must be judged according to the standards of the decedent's profession and not by the decedent's particular work record; that the unusual pathological result test[2] does not apply in

---

[2] Under this test, recovery is allowed where a previously healthy employee suffers a heart attack or some similar illness while doing work which calls for no unusual physical strain on the ground that it is assumed that the work must have contributed to the attack since there was no history of a pre-existing pathological disorder. The Superior Court has held that the doctrine is inapplicable where the employee has a history of heart trouble. *Lingle v. Lingle Coal Co.*, 203 Pa. Superior Ct. 464, 201 A. 2d 279 (1964).

a case such as this where the decedent had a history of heart trouble; and that a trial court could not adopt the so-called "New Jersey rule"[3] since this would entail overruling many appellate court decisions in Pennsylvania. The Superior Court affirmed per curiam, Judge HOFFMAN filing a dissenting opinion. 211 Pa. Superior Ct. 446, 236 A. 2d 819 (1967).

Appellant asks that we reverse the order of the Superior Court for any of three reasons: first, that the unusual strain doctrine applies if the strain is unusual for the decedent although not necessarily for other members of his profession or job occupation; second, the unusual pathological result test should be applied even though the decedent had suffered from heart disease in the past; third, that this Court should adopt the "New Jersey rule."

Both parties agree that at the present time the unusual strain doctrine is recognized in Pennsylvania. Under this doctrine there can be no recovery unless the claimant proves that the death or injury resulted from an overexertion or unusual strain encountered in the course of the employment. The most recent pronouncement of our Court dealing with this test was in

---

[3] This test was formulated in *Ciuba v. Irvington Varnish & Insulator Co.*, 27 N. J. 127, 141 A. 2d 761 (1958). The court said at pages 134-35: "An 'accident' in the legislative sense is an 'unlooked for mishap or an untoward event which is not expected or designed'; and such is the case where a heart ravaged by disease succumbs to strain or exertion arising from the doing of the master's work, even though it be but a normal incident of the service, in no sense extraordinary, and such as a sound heart could withstand. It is basic to the statutory policy that, if strain or exertion attending the rendition of the service aggravates or accelerates the progress of a pre-existing physical infirmity or condition due to either trauma or disease, and disability or death ensues, there is a compensable accident and injury. . . . The essential inquiry is whether the disabling injury or death is causally related to strain or exertion attendant on the doing of the master's work."

1943.[4] In the past quarter century there has been much criticism of the unusual strain doctrine.[5] The most recent survey indicates that only approximately twelve states, including Pennsylvania, still follow this doctrine.[6] Such industrial states as New Jersey,[7] New York[8] and Michigan[9] have recently abrogated the unusual strain doctrine.

The doctrine has been attacked on at least three grounds. First, the doctrine is based on the erroneous assumption that the accidental character of an injury must be found in the cause rather than in the result. This emphasis on the cause rather than on the result is especially anomalous in Pennsylvania where the unusual pathological result test which places the emphasis on the result entirely developed. See: *Parks v. Miller Printing Machine Co.*, 336 Pa. 455, 459, 9 A. 2d 742 (1939). Second, the unusual strain doctrine is based on the erroneous assumption that that which is unusual is necessarily accidental. *Royko v. Logan Coal Co.*, 146 Pa. Superior Ct. 449, 462, 22 A. 2d 434

---

[4] *Good v. Pennsylvania Department of Property and Supplies*, 346 Pa. 151, 30 A. 2d 434 (1943). See also: *Lorigan v. W. O. Gulbranson, Inc.*, 184 Pa. Superior Ct. 251, 255, 132 A. 2d 695 (1957); *Garver v. B. K. Elliott Co.*, 155 Pa. Superior Ct. 511, 38 A. 2d 533 (1944); *Strode v. Donahoe's Fifth Avenue Store*, 127 Pa. Superior Ct. 231, 193 A. 86 (1937).

[5] See, e.g., 1A Larson, Workmen's Compensation Law, §38.00 (1966) [1A Larson]; Larson, The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution, 65 Mich. L. R. 441 (1967).

[6] 1A Larson, §38.30, at 551-59.

[7] See note 3, supra.

[8] New York now allows recovery if the strain is unusual in relation to any one of the three following norms: (1) the employee's own usual work; (2) the wear and tear of ordinary nonemployment life; or (3) the usual work of other employees. 1A Larson, §38.64(a), at 613.

[9] *Sheppard v. Michigan Natl. Bank*, 348 Mich. 577, 83 N.W. 2d 614 (1957).

(1941). If a man who never lifted heavy weights decides to lift a 100-lb. bag, this would be considered unusual, but it would hardly be considered accidental since he consciously decided to lift the bag. Third, the rule has proved to be unworkable because of the difficulty of concluding what is an unusual strain in a given situation. As a result, the appellate cases in Pennsylvania cannot easily be categorized into any meaningful and consistent pattern.

Although the facts seem to indicate that the unusual strain doctrine is no longer responsive to the problems in this area, we choose not to abrogate the doctrine in this opinion for the following reasons. First, such a major change should preferably be made by the legislature. The adoption of a totally new concept such as the "New Jersey rule" should be preceded by legislative investigations in an effort to determine the latest medical knowledge concerning the connection between heart attacks and employment strain. Furthermore, we as a court are not in a position to study the possible consequences from an insurance standpoint of the adoption of a more liberalized rule for recovery in heart attack cases. We cannot and should not, as a judicial body, convert workmen's compensation coverage into general group life and health insurance coverage. Therefore, we would urge the legislature to undertake a study of the desirability of revising Pennsylvania's unusual strain doctrine.

Our second reason for choosing not to overrule the line of cases upholding the unusual strain doctrine is that it is not necessary in this case. We conclude that the Workmen's Compensation Board and the courts below applied an erroneous limitation on recovery under the facts of this case. The Court of Common Pleas held, "[T]here can be no doubt, under the authorities which control our decision, that the unusu-

alness must reside in the nature and character of the duties in the particular employment rather than in the experience of the individual." The court cited no authorities for this proposition, and Procon has also failed to bring to our attention any cases which convince us that the unusualness must be determined in relation to the profession in general.[10] Our research convinces us that the weight of authority[11] and of reason support the appellant's position. If workmen's compensation is intended to deal with the problems of the individual worker, then the standards which determine whether he shall recover compensation should also be geared to the individual. Furthermore, it is difficult to determine what amounts to an unusual strain for the members of a given profession. Certainly, in a given profession or occupation different members would be subjected to far different working conditions. Most assuredly, there are many carpenters who have never worked under conditions such as those which led to the decedent's death. What is more, the industrywide test is difficult to apply because a given member of a profession may be able to tolerate a greater or lesser amount of strain depending on his age. The de-

---

[10] There is one case which lends support to Procon's position. In *Hamer v. Rishel*, 147 Pa. Superior Ct. 585, 24 A. 2d 664 (1942), the Superior Court appeared to adopt the industry-wide test. While we feel that *Hamer* might be distinguishable on facts, nevertheless we find the reasoning advanced by the Court in that case to be unpersuasive in light of the studies which have been made on the subject in the twenty-seven years since *Hamer* was decided.

[11] The following cases support the appellant's position: *Rathmell v. Wesleyville Borough*, 351 Pa. 14, 40 A. 2d 28 (1944); *Mosser v. Mount Union Borough*, 158 Pa. Superior Ct. 277, 44 A. 2d 762 (1945); *Balaban v. Severe*, 157 Pa. Superior Ct. 463, 43 A. 2d 543 (1945); *Sadusky v. Susquehanna Collieries Co.*, 139 Pa. Superior Ct. 595, 12 A. 2d 828 (1940); *Murphy v. P. & R. C. & I. Co.*, 98 Pa. Superior Ct. 108 (1930).

cedent was sixty-four when he suffered his fatal attack. What is an unusual strain for a carpenter sixty-four years of age who had apparently worked many years in more tranquil surroundings may be far different from what would be an unusual strain for a twenty-year old apprentice carpenter.

For these reasons, we hold that the unusual strain doctrine is to be applied according to the work history of the individual involved and not according to the work patterns of his profession in general.[12]

The Board found, inter alia: "The death of the deceased was precipitated by the exertion and effort required of him in walking more than a half mile to his work and in working daily in mud at the job site." We can only upset such a finding if there has been a capricious disregard of competent evidence or if there is no evidence at all to support the finding. *McFarlane v. Mellon-Stuart Co.*, 205 Pa. Superior Ct. 66, 69, 208 A. 2d 40 (1965). We hold, on the contrary, that this finding is fully substantiated by the evidence of record.

As we read the instant record we find sufficient evidence that the overexertion involved in the walking between the parking area and the job site and working in terrain conditions which necessitated walking in deep mud were unusual to the work pattern of the de-

---

[12] We feel that the Superior Court aptly summarized the unusual strain rule in *Pudlosky v. Follmer Trucking Co.*, 206 Pa. Superior Ct. 450, 214 A. 2d 270 (1965). The Court said at page 455: "In undertaking to make its own award in favor of the claimant, the court below analyzed the evidence with regard to three 'determinative' premises: (1) whether or not the task of putting on truck chains was usual work *for the decedent*; (2) whether there was unusual strain and exertion; and (3) whether there was a causal connection between such strain and exertion and the decedent's death." (Emphasis added)

ceased. We recognize that overexertion which aggravates an existing disease may constitute an accident and that proof of aggravation of a pre-existing condition is not, standing alone, sufficient to prove an accident or to raise an inference that its cause was accidental. However, viewing the record in its entirety, we must come to the conclusion that the overexertion, unusual to the deceased, aggravated deceased's pre-existing heart disease to the extent that it did cause an "accident" within the statutory meaning. It is our view that under the circumstances the "accident" brought about by the unusual exertion and resultant injury constitutes a compensable event.

In view of the conclusion reached and in view of our belief that the *Ciuba* or so-called "New Jersey rule" is a matter in the first instance at least for legislative determination, we do not pass upon the applicability nor in any sense adopt the *Ciuba* or so-called "New Jersey rule."

Order reversed.

Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.

Mr. Chief Justice BELL dissents.

Mr. Justice COHEN took no part in the consideration or decision of this case.