## Rupchak *v.* Westinghouse Electric & Manufacturing Co., Appellant.

Argued April 16, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*James J. Lawler,* with him *James J. Dillon* and *Prichard, Lawler, Malone & Geltz,* for appellant.

*Hymen Schlesinger,* with him *Isadore Schlesinger* and *Schlesinger & Schlesinger,* for appellee.

OPINION BY HIRT, J., July 17, 1947:

Disability overtook claimant in the course of his employment. The question is: Does the record sustain the specific finding of the referee, affirmed by the board, that his disability resulted from accidental injury on October 19, 1943. Judgment was entered on an award of compensation for partial disability.

The lower court was unable to agree with the board that there was evidence of an accident in the ordinary sense of a fortuitous, unforeseen event, causing an injury. But it did find that claimant's disability was an unusual effect of a known cause and therefore accidental, in contemplation of the Workmen's Compensation Law, though occurring in the ordinary course of claimant's work performed in the usual way. The court was of the opinion that the case was of the second class referred to in *Good v. Pa. Dept. of Prop. & Sup. et al.,* 346 Pa. 151, 30 A. 2d 434. We are unable to agree either with the compensation authorities or with the lower court. The judgment must be reversed.

Claimant began his employment as a brazer with defendant in August 1942. In the course of a normal day's work he lifted about 30 "generator poles" from the

floor to a machine at table height, where he brazed copper bars to the poles, through openings. The poles were of metal, not over two feet long, and weighed from "60 to 100 or a little over a hundred pounds" each. There was always some oil on the surface of the poles and for this reason they were not easily handled. On October 19, 1943, claimant had processed 20 poles. He testified: "when I come to my machine where I was working, [after lunch] I went to lift up a pole to put on my work and as I was picking it up, the pole was a little oily, and it started slipping from me and I held onto it, and I picked it as far as my knee, and something snapped in my back and I stood in that position with the pole in my hand" until my buddy "took the pole away from me." Claimant did not lose his footing; he was in a stooped position but his posture in lifting was normal and did not result in a twisting of his body. There was nothing unusual in the weight nor in the condition of the pole, nor in claimant's manner of lifting it. Claimant testified: "Q. . . . these poles being oily, it was customary for them to slip, wasn't it? A. Yes, sir. Q. Then when this particular pole that you lifted then slipped, it was nothing different from what had happened many times? A. That's right." There is little difference of opinion as to claimant's subsequent physical condition. He was totally disabled for about two weeks and since then has been able to work only intermittently because of a "chronic low back sprain".

The evidence before the referee consisted in the testimony of claimant, his medical witness, an orthopedic surgeon who testified for defendant, and documentary evidence of prior similar disability overtaking claimant in his work with another employer.

Claimant's testimony, quoted above, fairly embodies everything upon which he relied to prove an accident. A helper worked with claimant but he was not called to amplify claimant's testimony as to the incident. From the record in a prior claim for compensation, admitted

in evidence in this case, it was established that: Claimant, before his employment with this defendant, worked as a loader in the mine of Reed Coal Mining Company; a compensation agreement was entered into by him with that employer for total disability resulting from "a severe sprain in the lumbar region" from accident on May 28, 1943 while claimant was pushing a car with his shoulder; compensation on that agreement was terminated by final receipt on August 19, 1943; before the end of that month claimant began his employment with this defendant; in May 1944 claimant petitioned the board to set aside the final receipt in that proceeding under §434 of the Workmen's Compensation Act, stating, "I was of the opinion that I would be able to resume my former employment, however, I was mistaken." The petition was later dismissed for lack of prosecution. While that proceeding was still pending, claimant filed the present claim for compensation.

All of the testimony is to the effect that x-ray examinations of claimant's back, after October 9, 1943, were negative for any bone or joint pathology and there was no evidence of arthritis. The testimony of defendant's medical witness was that "claimant suffered an aggravation of a pre-existing condition." The board accepted this testimony and the "history, as verity" of a prior injury and identical disability on May 28, 1943, but sustained the award on its conclusion that the present disability resulted from an aggravation of the pre-existing condition. The referee, without considering the prior disability or pre-existing condition, specifically found that "claimant suffered an accidental injury while trying to lift a generator pole, which was slippery . . ." This in reality was a conclusion and not a finding of fact and it was affirmed by the board although there was no testimony from which an accident could be inferred.

Even if the board had not in effect found an abnormal pre-existing condition in claimant's back, we would be obliged to act as though it had, for the evidence of it is

so conclusive that any other finding would amount to error of law. *Apker v. Crown Can Co. et al.,* 150 Pa. Superior Ct. 302, 28 A. 2d 728. In any view, therefore, it is of no controlling importance that claimant's well qualified medical witness testified: "My opinion is this patient has signs and symptoms of a chronic back sprain; namely of the right erector spinæ muscle mass. He is subject to low backache chronically; and to recurrent disability." When asked if claimant's then condition was the result of the occurrences of October 9, 1943, he said: *"According to the information I have,* that is a reliable conclusion." He first examined claimant in November 1944, about one year after the alleged injury, and the history which claimant gave him did not inform him of the prior injury or a pre-existing back sprain. The information, which this witness had, was incomplete in an essential respect, and could not supply the hypothetical ground for an opinion of any probative force, except as to the nature of claimant's disability.

A pre-existing condition or disease, rendering a claimant more susceptible to injury, does not necessarily defeat his right to compensation. But proof of the aggravation of a prior condition, in itself, is not enough; that fact does not give rise to an inference that its cause was accidental. There must be clear proof of an accident. *Adamchick v. Wyoming Val. Col. Co.,* 332 Pa. 401, 3 A. 2d 377; *Garver v. B. K. Elliott Co. et al.,* 155 Pa. Superior Ct. 511, 38 A. 2d 533. The testimony of claimant, under the circumstances, that "something snapped" in his back is insufficient for the purpose. *Toohey v. Carnegie Coal Corp.,* 150 Pa. Superior Ct. 297, 28 A. 2d 362. Proof of an accident on October 9, 1943, from over-exertion or other cause is entirely lacking and this is not a case in which the record should be remitted for further hearing. Cf. *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 133 A. 256.

Judgment reversed and here entered for defendant.