Corbeil *v.* A. & P. Stores, Appellant.

Argued June 13, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Otis W. Erisman,* with him *William C. Ferguson, Jr., Frank F. Truscott,* and *Truscott and Erisman,* for appellant.

*Joseph M. Leib,* with him *Harry J. Dranoff,* and *Rubin, Leib and Caesar,* for appellee.

OPINION BY WATKINS, J., September 12, 1968:

This is an appeal in a workmen's compensation case by the employer-appellant, A. & P. Stores, from an order of the Court of Common Pleas of Philadelphia County, that remanded the case to the Workmen's Compensation Board "for the purpose of permitting claimant to produce further testimony in support of her unusual pathological result claim". The claimant-appellee, Leona M. Corbeil, filed a motion to quash the appeal on the ground that it was interlocutory.

The claimant worked in the meat department of the food store. Her duties required her to carry trays of meat from racks to a wrapping table. The claimant was 35 years of age and claims that on June 27, 1963, while lowering a tray of meat from a rack to a table she injured her lower back. The claimant had

no prior back trouble. She first testified that as she lifted a three-foot tray of meat, weighing 30 to 35 pounds, she felt a stabbing pain in the lower back. She was performing her regular work. At the second hearing before the Referee, claimant testified that she had to reach over her head to get the tray from the conveyor; but the tray was greasy and began to fall and when she started to grab it again she got the pain in her back. The occurrence took place at about her quitting time. She did not return to work but sought immediate medical attention by a physician and was ultimately hospitalized twice. At the time of the hearing she was unable to bend or lift. She did not have surgery.

The Referee found for the claimant: "(1) Claimant sustained an accidental injury . . ." and "(2) The nature and cause of the injury were an unstable back, due to strain and narrowing of the intervertebral space at L-5, caused when claimant, while taking a three-foot long tray of cut beef from a conveyor . . .". The Referee evidently believed the testimony of the claimant given at the second hearing and found that an accident did take place.

The Board, on appeal, reversed the Referee and substituted the following pertinent findings of fact: "1. On June 27, 1963, while doing her ordinary work in the usual manner, the claimant sustained a strain in her lower back." "2. The claimant did not suffer a fracture of the bone or bony cartilage or a rupture of the softer tissue."; and the following conclusion of law: "2. The claimant failed to meet her burden of proving an accident within the meaning of the Workmen's Compensation Act, and is not entitled to compensation."

Claimant filed an appeal to the Court of Common Pleas and also filed a petition for a rehearing by the Board for the purpose of explaining the terminology used by the doctor in his testimony before the Referee.

An affidavit was filed by Dr. G. S. Leventhal, the claimant's witness, that the claimant had a herniated disc, having suffered a rupture of the annulus fibrosus. The Board denied a rehearing, the claimant did not appeal. The court below entered an order remanding the case to the Board for the purpose of having Dr. Leventhal clarify his testimony. This appeal followed and the petition to quash was then filed by the claimant.

The Board found as a fact that there was no accident and disbelieved the testimony of the claimant at the second hearing before the Referee. This was within the power of the fact finder and cannot be disturbed by the court below. However, the Board in its opinion said: "Consequently, for the claimant to recover, it is incumbent upon her to prove an accident under the unexpected and unusual pathological result doctrine. Unfortunately, her proven injury does not qualify. There is no positive and unequivocal medical testimony to support a finding that she sustained a break of the bone or bony cartilage or a rupture of the softer tissue, as required by Landis v. General Motors Corp., 180 Pa. Superior Ct. 332 (1956)." The matrix of the Landis case, supra, was that the doctrine of unexpected pathological result could not apply in that it was a case of an aggravation of a pre-existing condition.

As this Court said in Rovere v. Interstate Cemetery Co., 164 Pa. Superior Ct. 233, 63 A. 2d 388 (1949), at page 236: "There can be no quarrel with the general principle of the cases, on which appellant relies, that disability overtaking an employe at work is not compensable unless it is the result of an accident, and to constitute an accident there must be some untoward occurrence aside from the usual course of events. In applying that rule we noted in Buck v. Arndt, supra, that the Adamchick, and like cases of our Supreme

Court but 'establish the principle (followed by us in Brodbeck v. W. F. Trimble & Sons, 150 Pa. Superior Ct. 299, 27 A. 2d 732, and Paydo v. Union Collieries, 146 Pa. Superior Ct. 385, 22 A. 2d 759), that when an employee, going about his work in the usual way, is overcome by a lesion which may be the natural result of a pre-existing condition it cannot be said to have been unexpected or unforeseen, in the absence of proof it was caused by some accidental preceding means', e.g., slipping or falling. Cf. Trau v. Preferred Accid. Ins. Co., 98 Pa. Superior Ct. 89. (Emphasis added.) The above principle in its proper application does not conflict in any way with the holding of the class of cases, to which the present claim belongs, that disability of a normal, healthy workman, with no physical weakness, other than is common to all men, may be compensable though the result of muscular strain or internal lesion in the performance of ordinary manual labor usual to the employe's work.

"Cases of this kind are of the second type as classified by Mr. Justice STERN in Parks v. Miller P. Mach. Co., 336 Pa. 455, 459, 9 A. 2d 742, consisting of those '. . . where the work or act performed by the employe is voluntary, and not marked by any abnormal or unusual feature, but where there occurs an unexpected and unusual pathological result; that is to say, where the accident resides in the extraordinary nature of the effect rather than in the cause.' . . .". See also: *Gammaitoni v. Gasparini Ex. Co.*, 185 Pa. Superior Ct. 643, 139 A. 2d 679 (1958).

In *Wance v. Gettig Engineering & Manufacturing Co., Inc.*, 204 Pa. Superior Ct. 297, 204 A. 2d 492 (1964), the claimant was employed as the operator of a treadle sewing machine. Her work required constant pedaling. She suffered pain in her right knee and discovered a swelling in that area. It was diagnosed as

a torn ligament. She was a normal healthy woman who had no previous trouble with her knee. This Court said at page 300: "However, the law is well settled that the factor which is unexpected may lie either in the circumstance causing the injury or in the nature of the injury itself: Good v. Pa. Department of Property and Supplies, 346 Pa. 151, 30 A. 2d 434. Where an employe is performing his usual work but there occurs an unexpected and unusual pathological result, the accident resides in the extraordinary nature of the effect rather than in the cause: Gammaitoni v. Gasparini Excavating Co., 185 Pa. Superior Ct. 643, 139 A. 2d 679. The foregoing principle applies only to disability of a normal healthy workman who has no physical weakness other than is common to all men."

In the instant case the claimant was a normal healthy woman who had no prior back ailment. As the court below said: "If the Board had rejected Dr. Leventhal's testimony, we would sustain the Board, since fact finding is within the province of the Board and not this Court. However, the Board did not reject Dr. Leventhal's testimony, but, to the contrary, found that his testimony as a matter of law did not sustain claimant's burden of proof."

The testimony of Dr. Leventhal included the following: "I felt from my examination and the history she gave that she had a disc . . .". And further: "Q. What do you attribute the present disability to? A. A narrow fifth lumbar space. She apparently has a disc there too. Q. Do you feel that the herniated disc has been corrected? A. I think so . . .". And still further: "Q. Does the narrowing also show up clearly on x-ray? A. Oh, yes." There was no rebuttal testimony.

The testimony indicates the existence of a ruptured disc and the present disability as a narrowed fifth lumbar space which needs further medical exploration to

determine whether this involves a rupture of the softer tissues. The affidavit of Dr. Leventhal, attached to the petition for a rehearing, sets forth definitely that the claimant's injury was a ruptured disc and the rupture of the annulus fibrosus. It is true that the decision of the Board dismissing the petition for a rehearing is final but the court below had the entire record before it which included the doctor's affidavit. As the court said: "We are not holding that the Board must accept Dr. Leventhal's testimony; we merely hold that it should give claimant an opportunity to permit Dr. Leventhal to clarify his testimony."

Was the narrowing caused by a rupture of the annulus fibrosus? Was the narrowing, as testified to, a break in the softer tissues? The annulus fibrosus is the ring forming the circumference of the intervertebral fibro cartilage. What was the doctor talking about when he said she had a disc, if it wasn't a herniated disc? Such questions indicate the anomalous nature of the doctor's testimony upon which the conclusion of law rests.

We hold, therefore, that the court below was justified in its remand order. The Board's conclusion was erroneous in holding that the doctor's testimony, as a matter of law, if believed, did not sustain her burden of proof in the application of the unusual pathological result. The remand order will permit the doctor to further explain his testimony, which is admittedly unclear. Determination of the doctor's credibility remains the function of the Board.

The appeal is quashed as interlocutory.