City of Williamsport and Pennsylvania Manufacturers' Association Insurance Co., Appellants, *v.* Workmen's Compensation Appeal Board and Michael Marchese.

Argued March 8, 1974, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

146

*William S. Kieser,* with him *Ertel & Kieser,* for appellants.

*Thomas S. Quinn,* with him *James Diefenderfer,* for appellees.

OPINION BY JUDGE ROGERS, April 1, 1974:

Michael Marchese (claimant) was employed by the City of Williamsport (employer) as a fireman.

In April, 1971, the claimant consulted a physician because of a pain in his back and thighs. X-rays were taken which proved negative. The doctor diagnosed the claimant's ailment as an acute low back strain or a lumbosacral strain and provided one day's therapy.

On December 14, 1971, while fighting a fire, the claimant and a co-worker were required to carry a dresser containing clothing from the second to the ground floor of a burning dwelling house. The claimant was thereafter directed to uncouple and place a fire hose on the fire truck.

On December 14, 1971, the claimant experienced acute back pain, was admitted to a hospital and on January 25, 1972, operated upon for a ruptured intervertebral disc.

On April 11, 1972, the claimant filed his claim petition for workmen's compensation in which he alleged that on December 14, 1971, an accident occurred "while fighting a fire while carrying out a piece of furniture, it started to slip and in attempting to catch it I twisted my back."

At the hearing before the referee conducted in late September, 1972, the claimant and the co-worker testified that as the claimant was assisting in carrying the dresser the co-worker slipped, causing the dresser to be thrust against the claimant. The claimant testified that he felt a sharp pain at this time and that the pain recurred as he was later stowing the hose.

A claims representative of the employer's workmen's compensation carrier produced a tape of an interview with the claimant conducted on January 17, 1972. A transcription of this tape went into evidence without objection. The following questioning of the claimant occurred at this interview: "Q. Now you mention at the time of fighting fire you moved a chest of drawers full of clothes, out with help of another man? Was this from first or second floor? A. The second floor was right outside to the sidewalk from second floor. Q. What portion of the chest of drawers did you have when you were moving it, the lower side or upper side? A. Coming down I was coming down I would have the weight towards me. Q. In other words did anything happen at that time, you might have slipped or something on steps, you don't remember anything? A. Nope. I had my mask on, my helmet, tank, my boots, my coat, my gloves. . . . Q. It wasn't until you came out and were starting to take hoses up that you noticed any pain at all, you can't remember any specific thing that might have caused it? A. Nope. Q. You were of course doing your regular job, is that correct? A. Right. Q. You don't recall and I'll ask you in a lump sum, do you recall slipping, falling, bumping or twisting yourself at anytime that particular day? A. No, because I'll tell you when you are in the house fire, when you have an officer there he directs the men, so everyone is in order. We went in that house we knocked the fire out and we threw windows open, in fact we moved the beds, set of bunk beds right by window, we had to move

the bunk beds, I had to move bunk beds to get the windows open. Q. So it is quite possible that you may have done something but don't recall doing it? A. Right."

When interviewed by the claims adjuster the claimant denied having back problems before December 14, 1971. At the referee's hearing the claimant denied having been treated for a back ailment previous to December of 1971 and asserted that no x-rays had been taken of his back before that time, until confronted with the name of the doctor whom he had consulted the previous April.

The referee denied compensation, finding that the claimant suffered from the same disability in his back on December 14, 1971, as he had on the previous April, that the onset of pain on December 14, 1971, occurred while claimant was dismantling the hose and that the claimant failed to prove that he suffered an accidental injury while working for the employer on December 14, 1971.

The Workmen's Compensation Appeal Board, which heard no evidence, set aside the significant referee's findings and made its own findings that an accident occurred while the claimant was helping with the dresser, and that the claimant was a normal healthy workman with no "preexisting chronic physical defect in his back" prior to the accident. The Appeal Board decided inconsistently that there was an accident which caused the injury and that the injuries were an unusual pathological result of the claimant's activities. We need not dwell on the Appeal Board's decision. In *Universal Cyclops Steel Corporation, et al. v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973), we held that changes to Section 423 of the Pennsylvania Workmen's Compensation Act effected by Acts Nos. 12 and 61 of 1972 removed, as of May 1, 1972, the power of the Appeal Board to set aside referees' findings based

upon competent evidence. The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, as amended by the Act of February 8, 1972, P. L. , No. 12, §3, and the Act of March 29, 1972, P. L. , No. 61, §23, 77 P.S. §854. Our decision in *Universal Cyclops* was made June 11, 1973; the Board's opinion and order was made September 27, 1973. We are having increasing difficulty believing that the Board's disregard of our holding is inadvertent. In any event, we must rely on the facts as found by the referee.

The claimant had the burden of establishing that his injuries and consequent disability were caused by an accident. Our review is for the purpose of determining whether the referee's findings of fact are consistent with each other and with his conclusions and order and can be sustained without a capricious disregard of competent evidence. *Wilkes-Barre Iron & Wire Works, Inc., et al. v. Workmen's Compensation Appeal Board and Richard I. Meyers,* 9 Pa. Commonwealth Ct. 612, 309 A. 2d 172 (1973). The referee did indeed disregard the claimant's evidence relating to the alleged incident with the dresser. We cannot conclude that this action was capricious in the light of the claimant's statement to the claims representative that there was no such incident and his other testimony clouding his credibility.

As noted, the referee found that the onset of the claimant's ruptured disc occurred in April. The only significance of this finding is in testing the Appeal Board's conclusion that the claimant was entitled to compensation under the doctrine of an unusual pathological result. This doctrine would be available only if the claimant's injury was to a part of his body not previously weakened, injured or diseased. *A. P. Green Refractories Co., et al. v. Luckey, et al.,* 8 Pa. Commonwealth Ct. 172, 301 A. 2d 914 (1973). The referee's

finding was not in capricious disregard of competent evidence because the physician who examined the claimant in April, 1971, testified that in his opinion the claimant's back problem originated at that time.

### ORDER

AND Now, this 1st day of April, 1974, the decision and order of the Workmen's Compensation Appeal Board is reversed and the referee's order dismissing the claim petition is reinstated.