Panther Valley School District and Home Insurance Company, Insurance Carrier, Appellants, *v.* Workmen's Compensation Appeal Board and Alvenia M. Neyer, Widow of Russell L. Neyer, Deceased, Appellees.

Argued March 7, 1974, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*John R. Lenahan,* with him *Joseph A. Murphy* and *Lenahan, Dempsey & McDonald,* for appellants.

*John M. Yarema,* with him *Martin H. Philip,* for appellee, Neyer.

OPINION BY JUDGE MENCER, April 18, 1974:

Russell L. Neyer (Neyer), at the time of his death on October 24, 1971, was employed by the Panther Valley School District (School District) as a custodian assigned to look after the school's athletic field and stadium. He had worked for the School District approximately 29 years and had taken care of the stadium for more than 20 years.

His duties at the stadium included keeping the grass mowed, sweeping out the dressing rooms, cleaning the rest rooms, and general maintenance. On those days when football games were scheduled at the stadium, he was required to set up the amplifying system, place markers on the field, open the gates, turn on the lights, unlock doors, and be in attendance at the game. Following the game—usually the next day, as most games were played in the evening—he was required to clean the stadium, a task which included sweeping up all the rubbish from under the bleachers and the grandstand. The Panther Valley football stadium could accommodate 3200 persons, and Neyer would often arrange to have someone assist him in his after-game cleanup responsibilities.

From April to November each year Neyer would work at the stadium from 7 a.m. to 3 p.m. except on days when a football game would be played, on which days he would return to the stadium for the period of 5 p.m. to 10 p.m. From December until April he would work an 8-hour day shift during 5 days each week at the high school building.

Panther Valley High School usually played its home football games on Saturday evening, and Neyer would go to the stadium on Sunday morning after each Saturday evening home game to fulfill his cleanup duties. It was not unusual to have more than one game played at the stadium during any given weekend since it served as the home field for the Marian High School football

team as well as the Panther Valley Freshman, Panther Valley Junior Varsity, and Panther Valley Varsity football teams.

During the weekend in question, the Marian High School team played at the stadium on Friday evening, October 22, 1971, and the Panther Valley Freshmen played there on Saturday morning, October 23, 1971. The record is unclear as to whether there was a game played in the stadium on Saturday evening, October 23, 1971. The Director of Athletics for the School District testified that a game had been scheduled for that evening but had been postponed until Monday evening. The Workmen's Compensation Appeal Board (Board), in its opinion, states that the "Saturday night game was postponed to Monday." However, Mark McHugh, who often helped Neyer clean the stadium after games, testified that he had attended the game on Saturday evening, October 23, 1971, and had seen Neyer in attendance at the game. Neyer's wife testified that she *thought* her husband had gone back to work on Saturday evening, October 23, 1971, and returned home at 10 p.m. after the football game. The referee made no finding on this important fact.

However, it is undisputed that Neyer left home at 6:45 a.m. on Sunday morning, October 24, 1971, and went to the stadium to clean up debris from the Saturday morning game that was played or, perhaps, debris from both of the Saturday games if, in fact, there was a Saturday evening game played. Also, it is undisputed that Neyer's helper, Mark McHugh, arrived at the stadium at 7:45 a.m. on Sunday morning and found Neyer sweeping the stands. Upon McHugh's arrival, Neyer stated that he "didn't feel good" and McHugh told him to take a little rest. Neyer at first sat down on the bleachers and then shortly announced that he was going over to the refreshment stand. McHugh continued to work, and in 10 or 15 minutes he observed

Neyer returning from the refreshment stand and coming up over the steps of the stands. McHugh turned to sweep again and heard a thud and looked around and saw Neyer lying "on the steel, on the first layer." McHugh rushed to Neyer, who had lost consciousness, and was unable to detect any pulse. Help was immediately summoned and Neyer was soon taken to a hospital where he was pronounced dead upon arrival.

It is undisputed that Neyer worked during the hours of 7 a.m. to 3 p.m. and 5 p.m. to 10 p.m. on Friday, October 22, 1971. Also, no one disputes that he worked from 7 a.m. to 3 p.m. on Saturday, October 23, 1971. Whether or not he worked from 5 p.m. to 10 p.m. on Saturday is uncertain since the referee made no finding of fact on this question, and the testimony and the Board's statement are in conflict, both as between witnesses and as between some witnesses and the Board. Further, it is admitted that Neyer worked from 7 a.m. to the time of his death (a period of approximately 1 hour) on Sunday, October 24, 1971. Thus, Neyer worked a total of 22 hours during the 3 days in question and possibly 5 additional hours on Saturday evening if the Saturday evening game was not postponed. The Board, in its opinion, states that Neyer died at 8 *p.m.* on October 24, 1971 and worked 37 hours during the 3-day period in question, while stating that the Saturday evening game was postponed. We are unable, from a study of the record, to comprehend these conclusions reached by the Board. The total number of hours worked by Neyer during the 3 days in question would have been 27 hours if the Saturday evening game was played and 22 hours if that game was postponed, and all of the testimony indicates that Neyer died at approximately 8 a.m., not 8 p.m., on Sunday, October 24, 1971.

On February 2, 1972, Alvenia M. Neyer, widow of Russell L. Neyer, filed a fatal-claim petition under The

Pennsylvania Workmen's Compensation Act,[1] alleging that her husband had suffered a heart attack due to overexertion during the course of his employment and this resulted in his death. The referee made an award to the claimant on October 30, 1972. The Board, without taking additional evidence, affirmed the award and dismissed the School District's appeal. This appeal followed and we reverse.

Our scope of review is limited to ascertaining whether or not constitutional rights were violated, an error of law was committed, or any necessary finding of fact was unsupported by substantial competent evidence. *Arnold Coal & Supply Co., Inc. v. Markle,* 8 Pa. Commonwealth Ct. 107, 300 A. 2d 916 (1973).

This is yet another case where the essential issue is whether or not a compensable "accident" occurred. We stated in *A. P. Green Refractories Co. v. Luckey,* 8 Pa. Commonwealth Ct. 172, 177-78, 301 A. 2d 914, 917 (1973), that " '[d]isability overtaking an employe at work is not compensable unless it is the result of an accident. . . . While the Workmen's Compensation Act should be liberally construed, its purpose is to compensate for accidental injuries and not to insure the life and health of an employe.' Retew v. Graybill, 193 Pa. Superior Ct. 564, 567-68, 165 A. 2d 424, 425-26 (1960). The burden of proving that an accident has occurred, moreover, is on the claimant. Hurlburt v. Fidelity Window Cleaning Co., 192 Pa. Superior Ct. 152, 160 A. 2d 251 (1960). An accident is any unforeseen, untoward happening which was not to be reasonably anticipated. Litman v. Litman, 185 Pa. Superior Ct. 69, 137 A. 2d 918 (1958); Lacey v. Washburn & Williams Co., 309 Pa. 574, 164 A. 724 (1933).

"In Hinkle v. H. J. Heinz Co., 7 Pa. Commonwealth Ct. 216, 222, 298 A. 2d 632, 635 (1972), we found that

---

[1] Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §1 et seq.

the cases disclose at least four basic categories of accidents: (1) a sudden, unexpected traumatic event such as a fall or blow; (2) unusual exertion in the course of work causing an unexpected and sudden injury; (3) an unusual pathological result of an ordinary condition of work; and (4) sudden and unexpected injury caused by the failure of an employer to furnish medical care to an employee." (Footnote omitted.)

Here we are concerned with the second classification; namely, unusual exertion in the course of work causing an unexpected and sudden injury. Pennsylvania still recognizes the unusual strain doctrine. *Hamilton v. Procon, Inc.*, 434 Pa. 90, 252 A. 2d 601 (1969). Under this doctrine there can be no recovery unless the claimant proves that the death or injury resulted from an overexertion or unusual strain encountered in the course of his employment. Also, this doctrine is to be applied according to the work history of the individual involved and not according to the work patterns of his profession in general. *Id.*

The School District contends that claimant's evidence was insufficient to prove that her husband suffered a heart attack as a result of unusual physical exertion because he was engaged in the performance of his usual duties as a custodian.

The critical aspect of this case is that the referee *did not* make any findings of fact indicating unusual physical exertion. He did state, as a conclusion of law, the following: "2. The Decedent, Russell L. Neyer, did suffer an accident, which resulted in his death, due to overexertion, while working for the Defendant on October 24, 1971."

However, the referee, we repeat, did not make any findings of fact to support this conclusion of law. Further, we have read the record with care and do not find therein evidence that would justify such findings of

fact as would be necessary to support the conclusion reached by the referee and affirmed by the Board.

An accident may not be inferred from the fact that an employe sustains a heart attack as a result of exertion necessary for the performance of his usual duties. *Billick v. Republic Steel Corporation,* 214 Pa. Superior Ct. 267, 257 A. 2d 589 (1969). The doing of an occasional act involving sustained muscular effort may be part of the usual duties of a workman and, though the work is hard, if it is, as here, of the same kind and quantity and done in the same manner as it has been performed in the past, disability resulting from the exertion does not constitute an accident. *McGowan v. Upper Darby Pet Supply,* 207 Pa. Superior Ct. 329, 217 A. 2d 846 (1966).

Neyer had been engaged for more than 20 years in looking after the stadium on football weekends. An integral part of his duties was the cleaning up of the stadium following each game. Here much is made of the fact that, instead of the normal two games played at the stadium during a weekend, there were four games scheduled for this weekend. However, the game scheduled for Monday did not have any bearing on Neyer's death that occurred Sunday morning. Likewise, the game played Saturday morning did not result in the stadium's being cleaned an extra time. The testimony establishes that Neyer and McHugh cleaned the stadium on Saturday, following the Friday evening game, that they completed this cleaning operation between 1:30 p.m. and 2 p.m., and further, that they next commenced to clean the stadium on Sunday morning shortly before Neyer's death.

Therefore, Neyer, with McHugh's help, had cleaned the stadium only once on the weekend of his death and was commencing to do so a second time when he experienced his fatal heart attack. He was doing nothing unusual, and the work he was engaged in on Sunday

morning preceding his death was of the same kind and quantity and done in the same manner as it had been done by him in the past.

Not only was this true as to his Sunday morning work, but we conclude that it was likewise true as to his Friday and Saturday work that weekend. Although the freshman game on Saturday morning would suggest something unusual, an examination of the record discloses that it did not have a meaningful import here since Neyer and McHugh were engaged, on Saturday, in cleaning the stadium from the Friday evening game, as always.

This record does not support the contention that the number of games played or scheduled increased Neyer's workload or responsibilities from those he had on any other weekend. Further, the referee makes no finding of fact to the contrary nor does he make it a finding of fact that Neyer was doing anything of an overexerting nature in the performance of his work.

The Board erroneously stated that the decedent "worked a total of 37 hours between Friday morning and Sunday evening when he died" and "it is clear that the unusual number of hours necessitated on the weekend in question would constitute an unusual strain." Neyer died Sunday morning, not Sunday evening, and may have worked only 22 hours during the 3-day period but, in any event, no more than 27 hours.[2] More significantly, this was his usual work pattern on football weekends and his work requirements were not shown, on this record, to be of greater magnitude.[3]

---

[2] As we have previously mentioned, the record is unclear and the referee makes no finding that the Saturday night game was played.

[3] If the Saturday morning game produced additional debris and thereby increased the work requirements of the claimant, the record fails to disclose it.

Therefore, we must reluctantly conclude that claimant has not met her burden of establishing by competent evidence that her husband's work preceding his death involved unusual strain or unusual exertion. Accordingly, we need not discuss whether or not this record supports the conclusion that there was a causal connection between Neyer's death and his alleged overexertion.

For the above reasons, we issue the following

### ORDER

AND Now, this 18th day of April, 1974, the order of the Workmen's Compensation Appeal Board granting compensation to Alvenia M. Neyer is hereby reversed and her claim is hereby denied.