B. G. Coon Construction Co. and Pennsylvania
Manufacturers' Association Insurance Company,
Insurance Carrier, Appellants, *v.* Workmen's
Compensation Appeal Board and Ruth Durbin,
Widow of George W. Durbin, Deceased, Appellees.

Argued September 11, 1974, before Judges KRAMER,
MENCER and BLATT, sitting as a panel of three.

*James P. Harris, Jr.,* with him Harris, *Johnston &
Maguire,* for appellants.

*Nathan Hyman,* with him *Thomas E. Roberts* and
*James N. Diefenderfer,* for appellees.

OPINION BY JUDGE KRAMER, October 21, 1974:

This is an appeal filed by B. G. Coon Construction
Company and the Pennsylvania Manufacturers' Asso-
ciation Insurance Company (Coon) from an adjudica-
tion of the Workmen's Compensation Appeal Board
(Board) dated January 17, 1974, in which the Board
affirmed an order of the referee granting benefits to
Ruth Durbin. The award was based upon a fatal claim
petition arising out of the death of her husband, George
Durbin (Durbin).

The facts in this case are not in real dispute. Dur-
bin was employed by Coon for about 15 years as a cost
accountant. One of the duties of this 58-year-old em-
ploye was to drive from his place of employment to the
office of the Department of Highways at Bear Creek
(a distance of about 15 miles) to obtain hauling per-
mits. Coon supplied Durbin with a company automo-
bile which, for at least two years prior to March 11,
1971, had been a Chevrolet Nova with an automatic
transmission. On March 11, 1971, Durbin left his resi-
dence at about 7:00 A.M. and drove to a Chevrolet ga-
rage, where he left the Nova for repairs. Shortly there-
after, he was required to obtain hauling permits, and a
one-half ton pickup truck with a standard transmission
was assigned to him for the trip. He drove to the office
of the Department of Highways, as usual, obtained the
hauling permits, and was returning to the truck when
he collapsed and died. His body was taken to the local
hospital, where it arrived at 9:15 A.M., and he was pro-
nounced dead on arrival.

Durbin had suffered a myocardial infarction in 1959 and although the record shows that he had been treated for high blood pressure and periods of anxiety, he had experienced no other heart attacks until the date of his death. There is no question that he had arteriosclerosis (coronary artery disease). Of particular importance, the record establishes that Durbin also suffered from ulnar neuropathy, which affects the ulnar nerve in the arm and results in muscular atrophy of the affected limb. Durbin had undergone a nerve transplant operation in his right arm in March of 1970, but despite the operation, very little muscular strength remained in his right hand and arm.

The claimant widow presented the testimony of two physicians who stated emphatically that taking into account Durbin's physical condition on the date of his death, the work-related experience of driving the truck with a manual shift, causing Durbin to maneuver his body in a fashion which he had not been required to do in his Nova, was sufficient additional exertion to have caused the fatal heart attack. The record shows that Coon called one physician, who stated in his direct testimony that it was his professional opinion that the unusual driving experience was not causally related to Durbin's death. On cross-examination, however, he admitted that because of the type of heart disease Durbin had, overexertion could have produced death.

Among the findings made by the referee is paragraph #4 which reads: "4. That on March 11, 1971, while in the course of his employment, the decedent was operating a pick-up truck, which operation of said vehicle, due to the physical limitations of the decedent, caused unusual exertion and stress upon the Claimant." Upon appeal to the Board, the referee's award was affirmed since, in the Board's view, the findings of the referee brought the case under the unusual strain doctrine, as proclaimed by our Supreme Court in *Hamilton v. Pro-*

*con, Inc.,* 434 Pa. 90, 252 A. 2d 601 (1969). In its appeal to this Court, Coon raises only one question, and that is whether there is substantial competent evidence in the record to support the referee's finding of unusual stress and exertion.

Our scope of review is limited to ascertaining whether or not constitutional rights were violated, an error of law committed, or, in cases such as this where the party with the burden of proof has won below, whether any necessary finding of fact was not supported by substantial evidence. *David v. Bellevue Locust Garage,* 12 Pa. Commonwealth Ct. 602, 604, 317 A. 2d 341, 342 (1974).

In *Hinkle v. H. J. Heinz Company,* 7 Pa. Commonwealth Ct. 216, 222, 298 A. 2d 632, 635 (1972), we determined that one of the four basic categories of accidents was "(2) unusual exertion in the course of work causing an unexpected and sudden injury." As we understand *Hamilton v. Procon, Inc., supra,* under the unusual strain doctrine there can be no recovery unless a claimant proves that the death or injury resulted from overexertion or unusual strain encountered in the course of his employment. This doctrine is to be applied in light of the work history of the individual involved and not according to the work patterns of his profession in general.

This is indeed a very close case. Recently, this Court in *Panther Valley School District v. Workmen's Compensation Appeal Board,* 13 Pa. Commonwealth Ct. 178, 318 A. 2d 403 (1974), had another case where a widow filed a fatal claim petition alleging that her husband had suffered a fatal heart attack due to overexertion during the course of his employment. In *Panther Valley,* however, the referee had not made any specific findings of fact identifying the unusual physical exertion upon which he based his conclusion. In that case, our reading of the record permitted us to

conclude that the work which the deceased worker had performed followed his "usual work pattern . . . and his work requirements were not shown, on this record, to be of greater magnitude." *Panther Valley School District v. Workmen's Compensation Appeal Board,* 13 Pa. Commonwealth Ct. at 186, 318 A. 2d at 408. In the instant case the referee made a significant specific finding of fact which we cannot ignore. Coon would have us determine, as a matter of law, that Durbin's driving of the truck was his usual work pattern and that even to a man in Durbin's condition there is no difference between driving a truck with a standard shift and driving a compact car equipped with an automatic transmission. This we cannot do. We have said time and again that this Court is not the finder of fact; rather, that task is placed by statute upon the referee or the Board, if it receives additional evidence. From our reading of the record, it seems possible that another referee, or the Board, or this Court could have come to a contrary result and made different findings of fact after hearing the same evidence. This does not, however, allow us to reverse the referee. Our only proper concern is whether the findings that were in fact made are supported by substantial evidence. This Court has ruled in *Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973), that the ultimate finder of fact is the referee and that unless new and different facts are found thereafter, based upon additional evidence in the record, the referee's findings must stand if supported by substantial evidence. In this case, it is apparent that the referee believed the two medical witnesses produced by the claimant, and whether we agree with their testimony is of no moment. What is of moment is that there is nothing in this record which would permit us to overturn the referee's findings as a matter of law. We therefore

## ORDER

AND Now, this 21st day of October, 1974, it is ordered that the B. G. Coon Construction Co., and/or its insurance carrier, the Pennsylvania Manufacturers' Association Insurance Co., pay to Ruth Durbin the sum of $39.00 per week, commencing March 11, 1971 and continuing thereafter subject to the limitations of the Workmen's Compensation Act, and that the B. G. Coon Construction Co., and/or its insurance carrier pay to Ruth Durbin $750.00 as reimbursement for reasonable burial expenses; interest at the rate of six percent (6%) per annum to be paid on all deferred payments.